**FARUQI & FARUQI, LLP**
Benjamin Heikali (SBN 307466)
*E-mail: bheikali@faruqilaw.com*
Joshua Nassir (SBN 318344)
*E-mail: jnassir@faruqilaw.com*
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885

**THE WAND LAW FIRM, P.C.**
Aubry Wand (SBN 281207)
*Email: awand@wandlawfirm.com*
400 Corporate Pointe, Suite 300
Culver City, California 90230
Telephone: (310) 590-4503
Facsimile: (310) 590-4596

*Attorneys for Plaintiffs and the Putative Classes*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION

SHELLY ASHTON and JAY SCHOENER individually, and on behalf of all others similarly situated,

Plaintiffs,

v.

THE J.M. SMUCKER CO., a corporation; and DOES 1 through 50, inclusive,

Defendants.

CASE NO.: 5:20-cv-00992

**CLASS ACTION COMPLAINT**

1. **Violation of California Consumer Legal Remedies Act**
2. **Violation of California False Advertising Law**
3. **Violation of California Unfair Competition Law**
4. **Violation of New York General Business Law § 349**
5. **Violation of New York General Business Law § 350**
6. **Breach of Express Warranty**
7. **Breach of Implied Warranty**
8. **Intentional Misrepresentation**
9. **Negligent Misrepresentation**
10. **Unjust Enrichment**
11. **Violation of Magnuson-Moss Warranty Act**

**DEMAND FOR JURY TRIAL**

1    Plaintiffs Shelly Ashton and Jay Schoener ("Plaintiffs"), on behalf of
2 themselves and all others similarly situated, bring this class action against Defendant
3 J.M. Smucker Co. and Does 1 through 50 ("Defendant") based on Defendant's false
4 and deceptive advertising and labeling of its Folgers ground coffee products.
5 Plaintiffs make the following allegations based on the investigation of their counsel
6 and on information and belief, except as to allegations pertaining to Plaintiffs
7 individually, which are based on their personal knowledge.

8                              **INTRODUCTION**

9    1.    This case revolves around a straightforward and systemic course of
10 false, misleading, and unlawful conduct: Defendant has grossly exaggerated the
11 number of cups of coffee that its Folgers ground coffee products can make in order
12 to induce consumer purchases and to charge more for these products.

13    2.    Throughout the statute of limitations period, Defendant has sold its
14 Folgers ground coffee products to consumers based on the representation that they
15 contain enough ground coffee to make up to a specific number of servings (e.g.,
16 "240 6 fl oz cups"). However, pursuant to Defendant's own definitions and
17 instructions, the Folgers ground coffee products do not contain nearly enough
18 ground coffee to make the number of servings represented.

19    3.    Plaintiffs and other consumers purchased Defendant's Folgers ground
20 coffee products because they reasonably believed – based on Defendant's
21 representations – that these products contained enough coffee to make the specified
22 number of servings. Had Plaintiffs and other consumers known the truth (i.e., that
23 the Folgers ground coffee products do not contain enough coffee to make the
24 specified number of servings), they would have paid less for them, or would not
25 have purchased them at all. As a result, Plaintiffs and other consumers have been
26 deceived and have suffered economic injury.

27    4.    Plaintiffs seek relief in this action individually, and on behalf of all
28 other similarly situated individuals who purchased Defendant's falsely and

-1-
**CLASS ACTION COMPLAINT**

deceptively labeled Folgers coffee products during the statute of limitations period, for violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*, California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, N.Y. Gen. Bus. Law §§ 349 & 350, and for breach of express and implied warranty, intentional and negligent misrepresentation, unjust enrichment, and for violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action filed under Rule 23 of the Federal Rules of Civil Procedure, there are thousands of proposed Class members, the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs, and Defendant is a citizen of a state different from at least some members of the proposed Class, including Plaintiffs.

6.    This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts in California, or otherwise intentionally did avail itself of the markets within California, through its sale of the Products in California and to California consumers.

7.    Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff Ashton's claims occurred in this District. Plaintiff Ashton resides in this District and she purchased the Products in this District.

## THE PARTIES

8.    Plaintiff Shelly Ashton is a citizen of the United States and the State of California and she currently resides in Riverside County. In April 2020, Plaintiff Ashton purchased the Folgers Classic Roast, 30.5 oz product and the Folgers Black Silk, 24.2 oz product from a Stater Bros. market in Beaumont, California. In purchasing the Products, Plaintiff Ashton saw and relied on Defendant's

representations made on the packaging. Specifically, Plaintiff Ashton reasonably believed that the Folgers Classic Roast product contained enough ground coffee to make 240 cups or servings because she saw the representation "MAKES UP TO 240 6 FL OZ CUPS" prominently printed on the front of the canister. Plaintiff Ashton also reasonably believed that the Folgers Black Silk product contained enough ground coffee to make 210 cups or servings because she saw the representation "MAKES UP TO 210 6 FL OZ CUPS" prominently printed on the front of the canister. Plaintiff Ashton's reasonable belief that the Products she purchased could make the represented number of servings was an important factor in her decision to purchase the products. Plaintiff Ashton would have paid significantly less for the Products had she known that the Products did not contain enough ground coffee to make the represented number of cups of coffee. Therefore, Plaintiff Ashton suffered injury in fact and lost money as a result of Defendant's misleading, false, unfair, and deceptive practices, as described herein.

9.     Plaintiff Jay Schoener is a citizen of the United States and the State of New York and he currently resides in Chenango County. In or around March and April 2020, Plaintiff Schoener purchased the Folgers Classic Roast, 48 oz product from a Walmart in Norwich, New York. In purchasing the Products, Plaintiff Schoener saw and relied on Defendant's representations made on the packaging. Specifically, Plaintiff Schoener reasonably believed that the Products contained enough ground coffee to make 380 cups or servings because he saw the representation "MAKES UP TO 380 6 FL OZ CUPS" prominently printed on the front of the canister. Plaintiff Schoener's reasonable belief that the Products he purchased could make the represented number of servings was an important factor in his decision to purchase the products. Plaintiff Schoener would have paid significantly less for the Products had he known that the Products did not contain enough ground coffee to make the represented number of cups of coffee. Therefore,

**CLASS ACTION COMPLAINT**

1  Plaintiff Schoener suffered injury in fact and lost money as a result of Defendant's
2  misleading, false, unfair, and deceptive practices, as described herein.

3        10.    Despite being misled by Defendant, Plaintiffs regularly shop at stores
4  where the Folgers ground coffee products are sold and they would like to continue
5  purchasing the Products in the future. Plaintiffs lack personal knowledge as to
6  Defendant's specific business practices relating to the Folgers ground coffee
7  products, and consequently, although they have been deceived by Defendant, there
8  is still doubt in their minds as to the possibility that some of the Folgers ground
9  coffee products could contain enough coffee to make the advertised number of
10 servings. Therefore, Plaintiffs may purchase the Folgers ground coffee products in
11 the future. In addition, Class members will continue to purchase the Folgers ground
12 coffee products, reasonably but incorrectly believing that they contain enough
13 coffee to make the advertised number of servings.

14       11.    Defendant is an Ohio corporation with its principal place of business in
15 Orrville, Ohio. Defendant is one of the world's biggest packaged goods companies
16 and owns the Folgers brand. As such, Defendant is responsible for the labeling,
17 marketing, sale, and distribution of the Products at issue. The Folgers brand is one
18 of the bestselling ground coffee brands in the United States and the state of
19 California.

20       12.    The true names and capacities of DOES 1 through 50, inclusive, are
21 unknown to Plaintiffs at this time, and Plaintiffs therefore sue such DOE defendants
22 under fictitious names.  Upon information and belief, each Defendant designated as
23 a DOE is in some manner highly responsible for the occurrences alleged herein, and
24 Plaintiffs and Class members' injuries and damages, as alleged herein, were
25 proximately caused by the conduct of such DOE defendants.  Plaintiffs will seek
26 leave of the Court to amend this Complaint to allege the true names and capacities
27 of such DOE defendants when ascertained.

28

**CLASS ACTION COMPLAINT**

**FACTUAL ALLEGATIONS**

**A.     The Folgers Coffee Products At Issue**

13.    The products at issue in this case consist of all varieties (e.g., different types of roasts) and sizes (e.g., 20 oz., 30.5 oz., etc.) of Folgers ground coffee canisters.

14.    These products (hereinafter collectively referred to as the "Products") include but are not limited to the following varieties of Folgers ground coffee canisters: Classic Roast; Classic Roast Decaf; ½ Caff; CoffeeHouse Blend; Country Roast; Simply Smooth; Simply Smooth Decaf; 100% Colombian; Black Silk; Black Silk Decaf; Brazilian Blend; Breakfast Blend; French Roast; Gourmet Supreme; House Blend; and Special Roast.

15.    The Products are sold across the United States through third party retailers including grocery chains and large retail outlets.

**B.     Defendant Grossly Overstates The Number Of Servings The Products Can Make**

16.    Defendant represents on the packaging of each of the Products that they contain enough ground coffee to make up to a specified number of servings. For example, Defendant prominently states on the front canister of the 30.5 oz. canister of Folgers Classic Roast Coffee: "MAKES UP TO 240 6 FL OZ CUPS."

17.    Representative images of the front of the canisters of some of the Products are depicted below:

**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





-6-
**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



18
19
20
21
22
23
24
25



26        18.    Defendant places a materially identical representation on the front label
27   of all the Products, although the number of represented servings of course varies
28   based on the size of the Product.

**CLASS ACTION COMPLAINT**

19.   On the back of all the Products, Defendant instructs consumers that they should use 1 tablespoon of ground coffee to make 1 serving/cup of coffee.[1]

20.   One tablespoon of ground coffee weighs approximately 5 grams.

21.   Based on these standard measurements, it is evident that Defendant grossly overstates the number of servings the Products can make.

22.   By way of example, Defendant represents on the 30.5 oz. canister that it "MAKES UP TO 240 6 FL OZ CUPS."

23.   As set forth above, 1 tablespoon of ground coffee is needed to make 1 serving. Therefore, 240 tablespoons of ground coffee are needed to make 240 servings.

24.   As set forth above, 1 tablespoon of ground coffee = approximately 5 grams. Therefore, 1200 grams of ground coffee is needed to make 240 servings [240 tablespoons x 5 grams].

25.   However, the 30.5 oz. canister has a net weight of 865 grams. Therefore, it contains only 72% of the amount of ground coffee required to make up to 240 cups of coffee [865 / 1200 x 100%]. This is equivalent to 173 cups of coffee.

26.   The same shortfall (i.e., 173 cups of coffee) is calculated by dividing the total grams of coffee in the 30.5 oz. cannister by the number of grams required to make a single serving [865 grams / 5 grams].

27.   In sum, the 30.5 oz. canister only contains enough coffee to make 173 cups, which is equivalent to 72% of the amount of ground coffee that is required to make the 240 cups of coffee:

- 865 grams / 1200 grams = 72%
- 173 cups / 240 cups = 72%

[1] Hereinafter, the term "cup" is synonymous, and used interchangeably with, the term "serving." Moreover, the term "cup" or "serving" is equivalent to 6 fluid ounces, based on Defendant's representations.

**CLASS ACTION COMPLAINT**

28.     Thus, it is impossible for the Product to contain enough ground coffee to make anywhere close to 240 cups of coffee. Defendant's representation that the 30.5 oz. canister "MAKES UP TO 240 6 FL OZ CUPS" is therefore false, deceptive, and misleading.

29.     The same calculations apply equally to all of the other Products. According to their net weight, they are unable to make anywhere close to the represented number of cups. These calculations are set forth in the following chart:

| Product Name | Net Weight | Number of "Up To" Servings Promised | Approximate Number of Servings Received | Approximate Percentage of Servings Received |
|---|---|---|---|---|
| Classic Roast | 11.3 oz. | 90 | 64 | 71.1% |
| Classic Roast | 22.6 oz. | 180 | 128 | 71.1% |
| Classic Roast | 30.5 oz. | 240 | 173 | 72.0% |
| Classic Roast | 38.4 oz. | 305 | 216 | 70.8% |
| Classic Roast | 48 oz. | 380 | 272 | 71.6% |
| Classic Roast | 51 oz. | 400 | 288 | 72% |
| Classic Decaf | 11.3 oz. | 90 | 64 | 71.1% |
| Classic Decaf | 22.6 oz. | 180 | 128 | 71.1% |
| Classic Decaf | 30.5 oz. | 240 | 173 | 72.0% |
| Classic Decaf | 33.9 oz. | 270 | 192.2 | 71.2% |
| 1/2 Caff | 10.8 oz. | 90 | 61.2 | 68% |
| 1/2 Caff | 25.4 oz. | 210 | 144 | 68.6% |
| CoffeeHouse Blend | 10.8 oz. | 90 | 61.2 | 68% |
| CoffeeHouse Blend | 25.4 oz. | 210 | 144 | 68.6% |
| Country Roast | 25.1 oz. | 240 | 142.2 | 59.3% |
| Country Roast | 31.1 oz. | 240 | 176.4 | 73.5% |
| Simply Smooth | 11.5 oz. | 90 | 65.2 | 72.4% |
| Simply Smooth | 23 oz. | 180 | 130.4 | 72.4% |
| Simply Smooth | 31.1 oz. | 240 | 176.4 | 73.5% |
| Simply Smooth | 34.5 oz. | 270 | 195.6 | 72.4% |
| Simply Smooth Decaf | 11.5 oz. | 90 | 65.2 | 72.4% |
| Simply Smooth Decaf | 23 oz. | 180 | 130.4 | 72.4% |
| 100% Colombian | 10.3 oz. | 90 | 58.4 | 64.9% |
| 100% Colombian | 24.2 oz. | 210 | 137.2 | 65.3% |

**CLASS ACTION COMPLAINT**

| Black Silk | 10.3 oz. | 90 | 58.4 | 64.9% |
|---|---|---|---|---|
| Black Silk | 24.2 oz. | 210 | 137.2 | 65.3% |
| Black Silk Decaf | 10.3 oz. | 90 | 58.4 | 64.9% |
| Black Silk Decaf | 20.6 oz. | 180 | 116.8 | 64.9% |
| Brazilian Blend | 10.3 oz. | 90 | 58.4 | 64.9% |
| Brazilian Blend | 24.2 oz. | 210 | 137.2 | 65.3% |
| Breakfast Blend | 10.8 oz. | 90 | 61.2 | 68% |
| Breakfast Blend | 25.4 oz. | 210 | 144 | 68.6% |
| French Roast | 10.3 oz. | 90 | 58.4 | 64.9% |
| French Roast | 24.2 oz. | 210 | 137.2 | 65.3% |
| Gourmet Supreme | 10.3 oz. | 90 | 58.4 | 64.9% |
| Gourmet Supreme | 24.2 oz. | 210 | 137.2 | 65.3% |
| House Blend | 10.3 oz. | 90 | 58.4 | 64.9% |
| House Blend | 24.2 oz. | 210 | 137.2 | 65.3% |
| Special Roast | 10.3 oz. | 90 | 58.4 | 64.9% |
| Special Roast | 24.2 oz. | 210 | 137.2 | 65.3% |

30.    There are 39 varieties of the Products listed in the chart above. Each and every one of them contains substantially less ground coffee than is required to make the recommended number of "up to" servings promised on the packaging. On average, these Products contain enough ground coffee to make only 68.25% of the number of servings promised on the packaging, thus revealing a systematic course of unlawful conduct by Defendant to deceive and shortchange consumers.

**C.    The False And Deceptive Serving Size Representation Harms Consumers**

31.    Plaintiffs and other consumers purchased the Products relying on Defendant's serving size representations on the Products' packaging.

32.    Plaintiffs' and consumers' reasonable belief that the Products are able to make up to the represented number of cups of coffee was a significant factor in each of their decisions to purchase the Products.

33.    Plaintiffs and Class members did not know, and had no reason to know, that the Products' labeling vastly overstates the number of cups of coffee they are able to make. At the time of purchase, a reasonable consumer cannot measure or

**CLASS ACTION COMPLAINT**

calculate how many servings the Products can make. Nor are reasonable consumers expected to keep track of the precise number of cups of coffee they make over a period of time.

34.     As the entity responsible for the development, manufacturing, packaging, advertising, distribution and sale of the Products, Defendant knew or should have known that each of the Products falsely and deceptively overstates the number of servings of coffee that can be made.

35.     Defendant also knew or should have known that Plaintiffs and other consumers, in purchasing the Products, would rely on Defendant's serving size representations. Nonetheless, Defendant deceptively advertises the Products in order to deceive consumers into believing they are getting considerably more coffee than they are paying for.

36.     Consumers are willing to pay more for the Products based on the belief that the Products contain enough ground coffee to make up to the represented number of servings. Plaintiffs and other consumers would have paid significantly less for the Products, or would not have purchased them at all, had they known that they were getting fewer servings of coffee than what they were promised.

37.     By analogy, if a consumer purchased a six-pack of soda, but only received four cans of soda, they would only be receiving 66.67% of what they paid for. The situation here is no different in terms of the harm to the consumer. The only difference is that, due to the nature of the Products, Defendant is able to conceal the gross shortfall of coffee because consumers do not keep track of the number of cups of coffee they can make over a period of time.

38.     Therefore, Plaintiffs and other consumers purchasing the Products have suffered injury in fact and lost money as a result of Defendant's false and deceptive practices, as described herein.

///

///

**CLASS ACTION COMPLAINT**

## CLASS ACTION ALLEGATIONS

39.    Plaintiffs bring this class action pursuant to Fed. R. Civ. P 23 and all other applicable laws and rules, individually, and on behalf of all members of the following Classes:

### Nationwide Class

All persons who purchased any of the Products in the United States within the applicable statute of limitations period.

### California Subclass

All persons who purchased any of the Products in the state of California within the applicable statute of limitations period.

### California Consumer Subclass

All persons who purchased any of the Products in the state of California, for personal, family, or household purposes, within the applicable statute of limitations period.

### New York Subclass

All persons who purchased any of the Products in the state of New York within the applicable statute of limitations period.

40.    Excluded from the Classes are the following individuals and/or entities: Defendant and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

41.    Plaintiffs reserve the right to modify or amend the definition of the proposed Classes and/or add subclasses before the Court determines whether certification is appropriate.

**CLASS ACTION COMPLAINT**

42.     Plaintiff Ashton is a member of the Nationwide Class, the California Subclass, and the California Consumer Subclass.

43.     Plaintiff Schoener is a member of the Nationwide Class and the New York Subclass.

44.     Numerosity: The proposed Classes are so numerous that joinder of all members would be impractical. The Products are sold throughout California at numerous retailers. The number of individuals who purchased the Products during the relevant time period is at least in the thousands. Accordingly, Class members are so numerous that their individual joinder herein is impractical. While the precise number of Class members and their identities are unknown to Plaintiff at this time, these Class members are identifiable and ascertainable.

45.     Common Questions Predominate: There are questions of law and fact common to the proposed Classes that will drive the resolution of this action and will predominate over questions affecting only individual Class members. These questions include, but are not limited to, the following:

      a.  Whether Defendant misrepresented material facts and/or failed to disclose material facts in connection with the packaging, marketing, distribution, and sale of the Products;

      b.  Whether Defendant's use of false or deceptive packaging and advertising constituted false or deceptive advertising;

      c.  Whether Defendant engaged in unfair, unlawful and/or fraudulent business practices;

      d.  Whether Defendant's unlawful conduct, as alleged herein, was intentional and knowing;

      e.  Whether Plaintiffs and the Classes are entitled to damages and/or restitution, and in what amount;

      f.  Whether Defendant is likely to continue using false, misleading or unlawful conduct such that an injunction is necessary; and

g. Whether Plaintiffs and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

46.    Defendant has engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiffs and Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact, namely, Defendant's deceptive packaging and advertising of the Products. Each instance of harm suffered by Plaintiffs and Class members has directly resulted from a single course of illegal conduct. Each Class member has been exposed to the same deceptive practice, as each of the Products: (a) bear the materially same serving amount representations, and (b) do not contain enough ground coffee to make anywhere close to the represented serving amount. Therefore, individual questions, if any, pale in comparison to the numerous common questions presented in this action.

47.    Superiority: Because of the relatively small amount of damages at issue for each individual Class member, no Class member could afford to seek legal redress on an individual basis. Furthermore, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

48.    Typicality: The representative Plaintiffs' claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by Defendant's uniform unlawful conduct as alleged herein.

49.    Adequacy: Plaintiffs will fairly and adequately protect the interests of the proposed Classes as their interests do not conflict with the interests of the members of the proposed Classes they seek to represent, and they have retained

-14-
**CLASS ACTION COMPLAINT**

counsel competent and experienced in class action litigation. The interests of the members of the Classes will be fairly and adequately protected by the Plaintiffs and counsel.

50.    Defendant has also acted, or failed to act, on grounds generally applicable to Plaintiffs and the proposed Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

**FIRST CLAIM FOR RELIEF**
**Violation of California's Consumers Legal Remedies Act**
**California Civil Code § 1750, *et seq*.**
**(*for the California Consumer Subclass*)**
**(*injunctive relief only*)**

51.    Plaintiff Ashton repeats the allegations contained in paragraphs 1-50 above as if fully set forth herein.

52.    Plaintiff Ashton brings this claim individually and on behalf of the members of the proposed California Consumer Subclass against Defendant pursuant to California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*

53.    The Products are "goods" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of such Products by Plaintiff Ashton and members of the California Consumer Subclass constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

54.    Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ." By marketing the Products with their current packaging, Defendant has represented and continues to represent that the Products have characteristics (i.e., contain enough ground coffee to make up to a specified number of servings) that they do not have. Therefore, Defendant has violated section 1770(a)(5) of the CLRA.

-15-
**CLASS ACTION COMPLAINT**

55.     Cal. Civ. Code § 1770(a)(7) prohibits "[r]espresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By marketing the Products with their current packaging, Defendant has represented and continues to represent that the Products are of a particular standard (i.e., contain enough ground coffee to make up to a certain number of servings) which they do not possess. Therefore, Defendant has violated section 1770(a)(7) of the CLRA.

56.     Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By marketing the Products as containing enough ground coffee to make a specified number of servings, but not intending to sell the Products as such Defendant has violated section 1770(a)(9) of the CLRA.

57.     At all relevant times, Defendant has known or reasonably should have known that the Products did not contain enough ground coffee to make the represented number of servings, and that Plaintiff Ashton and other members of the California Consumer Subclass would reasonably and justifiably rely on the packaging in purchasing the Products.

58.     Plaintiff Ashton and members of the California Consumer Subclass have justifiably relied on Defendant's misleading representations when purchasing the Products. Moreover, based on the materiality of Defendant's misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiff Ashton and members of California Consumer Subclass.

59.     Plaintiff Ashton and members of the California Consumer Subclass have suffered and continue to suffer injuries caused by Defendant because they would have paid significantly less for the Products, or would not have purchased them at all, had they known that the Products contain substantially less ground coffee to make the promised number of servings.

60.     In accordance with Cal. Civ. Code § 1780(d), Plaintiff Ashton is filing a declaration of venue, attached to the end of this Complaint.

61.     Under Cal. Civ. Code § 1780(a), Plaintiff Ashton and Class members seek injunctive relief only for Defendant's violations of the CLRA. On May 7, 2020, Plaintiffs, through their counsel, sent a notice letter by certified mail to Defendant of their intent to pursue claims under the CLRA, and an opportunity to cure, consistent with Cal. Civ. Code § 1782. *See* Exhibit A.

62.     If Defendant fails to take corrective action within 30 days of receipt of the notice letter, Plaintiffs intend to amend the complaint to include a request for damages as permitted under Cal. Civ. Code § 1782(d).

### SECOND CLAIM FOR RELIEF
**Violation of California's False Advertising Law**
**California Business & Professions Code § 17500, *et seq***
***(for the California Subclass and California Consumer Subclass)***

63.     Plaintiff Ashton repeats the allegations contained in paragraphs 1-50 above as if fully set forth herein.

64.     Plaintiff Ashton brings this claim individually and on behalf of the members of the proposed California Subclass and California Consumer Subclass against Defendant pursuant to California's False Adverting Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*

65.     The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code § 17500.

66.     Defendant has represented and continues to represent to the public, including Plaintiffs Ashton and members of both Classes, through its deceptive packaging, that the Products contain enough ground coffee to make substantially more servings than they can actually make. Because Defendant has disseminated

-17-
**CLASS ACTION COMPLAINT**

misleading information regarding the Products, and Defendant knows, knew, or should have known through the exercise of reasonable care that the representations were and continue to be misleading, Defendant has violated the FAL.

67.   As a result of Defendant's false advertising, Defendant has and continues to unlawfully obtain money from Plaintiff Ashton and members of both Classes.

68.   Plaintiff Ashton requests that this Court cause Defendant to restore this fraudulently obtained money to them and members of both Classes, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the FAL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff Ashton and members of both Classes may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**THIRD CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law ("UCL"),**
**California Business & Professions Code § 17200, *et seq.***
**(*for the California Subclass and California Consumer Subclass*)**

69.   Plaintiff Ashton repeat the allegations contained in paragraphs 1-50 above as if fully set forth herein.

70.   Plaintiff Ashton brings this claim individually and on behalf of the members of the proposed California Subclass and California Consumer Subclass against Defendant.

71.   The UCL, Cal. Bus. & Prof Code § 17200, provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

72.   Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law. Defendant's false and misleading advertising of the Products was and continues to be "unlawful" because it violates the CLRA, the FAL, and other applicable laws as described herein. As a result of Defendant's

unlawful business acts and practices, Defendant has unlawfully obtained money from Plaintiffs, and members of the Classes.

73.     Under the UCL, a business act or practice is "unfair" if the Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims. Defendant's conduct was and continues to be of no benefit to purchasers of the Products, as it is misleading, unfair, unlawful, and is injurious to consumers who rely on the packaging. Deceiving consumers as to how many cups of coffee the Products can make is of no benefit to consumers. Therefore, Defendant's conduct was and continues to be "unfair." As a result of Defendant's unfair business acts and practices, Defendant has and continues to unfairly obtain money from Plaintiffs, and members of both Classes.

74.     Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Products contain enough ground coffee to make substantially more servings than they can actually make. Because Defendant misled Plaintiff Ashton and members of both Classes, Defendant's conduct was "fraudulent." As a result of Defendant's fraudulent business acts and practices, Defendant has and continues to fraudulently obtain money from Plaintiff Ashton and members of both Classes.

75.     Plaintiff Ashton requests that this Court cause Defendant to restore this unlawfully, unfairly, and fraudulently obtained money to her, and members of both Classes, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff Ashton and members of both Classes may be

**CLASS ACTION COMPLAINT**

1  irreparably harmed and/or denied an effective and complete remedy if such an order
2  is not granted.

3

4                          **FOURTH CLAIM FOR RELIEF**
                          **Violation of N.Y. Gen. Bus. Law § 349**
5                              (*for the New York Subclass*)

6       76.    Plaintiff Schoener repeats the allegations contained in paragraphs 1-50
7  above as if fully set forth herein.

8       77.    Plaintiff Schoener brings this claim individually and on behalf of the
9  members of the proposed New York Subclass against Defendant.

10      78.    New York General Business Law ("GBL") § 349 declares unlawful
11 "[d]eceptive acts or practices in the conduct of any business, trade or commerce . . .
12 ." GBL § 349(a).

13      79.    The practices alleged herein – namely, deceiving consumers into
14 believing that the Products contain enough ground coffee to make substantially
15 more servings than they can actually make – are unfair, deceptive, and misleading,
16 in violation of GBL § 349.

17      80.    The foregoing deceptive acts and practices were directed at Plaintiff
18 Schoener and members of the New York Subclass.

19      81.    Defendant's misrepresentation regarding the Products is material to a
20 reasonable consumer because it relates to the amount of product the consumer is
21 receiving and paying for. A reasonable consumer attaches importance to such
22 representation and is induced to act thereon in making purchase decisions.

23      82.    Plaintiff Schoener and members of the New York Subclass have been
24 injured as a direct and proximate result of Defendant's violations described above as
25 they would have paid significantly less for the Products, had they known that they
26 do not contain enough ground coffee to make the represented number of servings.

27      83.    As a result of Defendant's unlawful action, Plaintiff Schoener and
28 members of the New York Subclass seek to enjoin Defendant's deceptive and

**CLASS ACTION COMPLAINT**

unlawful acts and practices described herein to recover actual damages, fifty dollars, or both, whichever is greater, as well as treble damages, reasonable attorneys' fees, and all other remedies this Court deems proper.

**FIFTH CLAIM FOR RELIEF**
**Violation of N.Y. Gen. Bus. Law § 350**
***(for the New York Subclass)***

84.     Plaintiff Schoener repeats the allegations contained in paragraphs 1-50 above as if fully set forth herein.

85.     Schoener brings this claim individually and on behalf of the members of the proposed New York Subclass against Defendant.

86.     GBL § 350 provides in relevant part: "False advertising in the conduct of any business, trade or commerce . . . in this state is hereby declared unlawful."

87.     In turn, GBL § 350-a defines false advertising as:

"advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual."

88.     Defendant's actions are untrue and misleading through its deceptive packaging, which represent that the Products contain enough ground coffee to make substantially more servings than they can actually make.

89.     The foregoing misleading acts and practices were directed at Plaintiff Schoener and members of the New York Subclass.

90.     Defendant's misrepresentation regarding the Products is material to a reasonable consumer because it relates to the contents of the Products (i.e., the amount of coffee available) purchased by the consumer. A reasonable consumer

attaches importance to such representation and is induced to act thereon in making purchase decisions.

91.   The foregoing misrepresentation has resulted in consumer injury or harm to the New York public.

92.   Plaintiff Schoener and members of the New York Subclass have been injured as a direct and proximate result of Defendant's violations described above as they would not have purchased the Products, or would have paid significantly less for them, had they known that the Products are unable to provide the amount of serving as represented on the Products' front label.

93.   As a result of Defendant's unlawful action, Plaintiff Schoener and members of the New York Subclass seek to enjoin Defendant's misleading and unlawful acts and practices described herein, to recover actual damages or five hundred dollars per violation, whichever is greater (or both), as well as treble damages, reasonable attorneys' fees, and all other remedies this Court deems proper.

### SIXTH CLAIM FOR RELIEF
**Breach of Express Warranty**
***(for the California Subclass, California Consumer Subclass, and New York Subclass)***

94.   Plaintiffs repeat the allegations contained in paragraphs 1-50 above as if fully set forth herein.

95.   Plaintiffs bring this claim individually and on behalf of the members of the proposed California Subclass, California Consumer Subclass, and the New York Subclass against Defendant.

96.   California's and New York's express warranty statutes provide that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code §

**CLASS ACTION COMPLAINT**

2313; N.Y. U.C.C. Law § 2-313.

97.    Defendant has expressly warranted on the Products' packaging that they can make up to a specific number of servings. For example, Defendant expressly states on the packaging of the 30.5 oz. canister that it "MAKES UP TO 240 6 FL OZ CUPS." However, as alleged herein, this express representation is patently false, as the 30.5 oz. canister can only make up to 173 cups of coffee, or only 72% of the amount of ground coffee promised by Defendant. All of the other varieties of the Products contain materially identical express representations that are false.

98.    These representations about the Products: (a) are affirmations of fact or promises made by Defendant to consumers that the Products contain enough ground coffee to make a specific number of servings; (b) became part of the basis of the bargain to purchase the Products when Plaintiffs and other consumers relied on the representation; and (c) created an express warranty that the Products would conform to the affirmations of fact or promises. In the alternative, the representations about the Products are descriptions of goods which were made as part of the basis of the bargain to purchase the Products, and which created an express warranty that the Products would conform to the product description.

99.    Plaintiffs and members of the Classes reasonably and justifiably relied on the foregoing express warranties, believing that the Products did in fact conform to those warranties.

100.    Defendant has breached the express warranties made to Plaintiffs and members of the Classes by failing to manufacture the Products with enough ground coffee to make the specific number of servings that were expressly warranted on the packaging.

101.    Plaintiffs and members of the Classes paid a premium price for the Products but did not obtain the full value of the Products as represented. If Plaintiffs and members of the Classes had known of the true nature of the Products, they

-23-
**CLASS ACTION COMPLAINT**

would not have been willing to pay the premium price associated with the Products.

102.   As a result, Plaintiffs and members of the Classes suffered injury and deserve to recover all damages afforded under the law.

103.   Within a reasonable amount of time after Plaintiffs discovered that Defendant did in fact breach the express warranty, Plaintiffs notified Defendant of the breach.

**SEVENTH CLAIM FOR RELIEF**
**Breach of Implied Warranty**
***(for the California Subclass, California Consumer Subclass, and New York Subclass)***

104.   Plaintiffs repeat the allegations contained in paragraphs 1-50 above as if fully set forth herein.

105.   Plaintiffs bring this claim individually and on behalf of the members of the proposed California Subclass and California Consumer Subclass against Defendant.

106.   California's and New York's implied warranty of merchantability statutes provide that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1); N.Y. U.C.C. Law § 2-314.

107.   California's and New York's implied warranty of merchantability statutes also provide that "[g]oods to be merchantable must be at least such as . . . (f) [c]onform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f); N.Y. U.C.C. Law § 2-314(2)(f).

108.   Defendant is a merchant with respect to the sale of Products. Therefore, a warranty of merchantability is implied in every contract for sale of the Products to California and New York consumers.

109.   By advertising the Products with their current packaging, Defendant made an implied promise that the Products contain enough ground coffee to make up to a specific number of servings. The Products have not "conformed to the

-24-
**CLASS ACTION COMPLAINT**

promises…made on the container or label" because they do not contain enough ground coffee to make up to the specific number of servings. Plaintiffs, as well as California and New York consumers, did not receive the goods as impliedly warranted by Defendant to be merchantable.

110.   Therefore, the Products are not merchantable under California and New York law and Defendant has breached its implied warranty of merchantability in regard to the Products.

111.   If Plaintiffs and members of the Classes had known that the Products could not make as many servings of coffee as represented, they would not have been willing to pay the premium price associated with them. Therefore, as a direct and/or indirect result of Defendant's breach, Plaintiffs and members of the Classes have suffered injury and deserve to recover all damages afforded under the law.

**EIGHTH CLAIM FOR RELIEF**
**Intentional Misrepresentation**
(***for the Classes***)

112.   Plaintiffs repeat the allegations contained in paragraphs 1-50 above as if fully set forth herein.

113.   Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant.

114.   Defendant marketed the Products in a manner indicating that they contain enough ground coffee to make up to a specific number of servings. However, the Products cannot make anywhere close to the represented number of servings. Therefore, Defendant has made misrepresentations about the Products.

115.   Defendant's misrepresentations regarding the Products are material to a reasonable consumer because they relate to the amount of product the consumer is receiving and paying for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making purchase decisions.

116.   At all relevant times when such misrepresentations were made,

Defendant knew that the representations were misleading, or have acted recklessly in making the representations, without regard to the truth.

117.   Defendant intends that Plaintiffs and other consumers rely on these representations, as evidenced by Defendant intentionally and conspicuously placing the misleading representations on the Products' packaging.

118.   Plaintiffs and members of the Classes have reasonably and justifiably relied on Defendant's intentional misrepresentations when purchasing the Products, and had the correct facts been known, would not have purchased them at the prices at which they were offered.

119.   Therefore, as a direct and proximate result of Defendant's intentional misrepresentations, Plaintiffs and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

**NINTH CLAIM FOR RELIEF**
**Negligent Misrepresentation**
(*for the Classes*)

120.   Plaintiffs repeat the allegations contained in paragraphs 1-50 above as if fully set forth herein.

121.   Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant.

122.   Defendant marketed the Products in a manner indicating that they contain enough ground coffee to make a specific number of servings. However, the Products cannot make anywhere close to the represented number of servings. Therefore, Defendant has made misrepresentations about the Products.

123.   Defendant's misrepresentations regarding the Products are material to a reasonable consumer because they relate to the amount of product the consumer is receiving and paying for. A reasonable consumer would attach importance to such

-26-
**CLASS ACTION COMPLAINT**

representations and would be induced to act thereon in making purchase decisions.

124.   At all relevant times when such misrepresentations were made, Defendant knew or had been negligent in not knowing that that the Products did not contain enough ground coffee to make the specified number of servings. Defendant had no reasonable grounds for believing its misrepresentations were not false and misleading.

125.   Defendant intends that Plaintiffs and other consumers rely on these representations, as evidenced by Defendant intentionally and conspicuously placing the misleading representations on the front of the packaging.

126.   Plaintiffs and members of the Classes have reasonably and justifiably relied on Defendant's negligent misrepresentations when purchasing the Products, and had the correct facts been known, would not have purchased them at the prices at which they were offered.

127.   Therefore, as a direct and proximate result of Defendant's negligent misrepresentations, Plaintiffs and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

**TENTH CLAIM FOR RELIEF**
**Quasi Contract/Unjust Enrichment/Restitution**
(*for the Classes*)

128.   Plaintiffs repeat the allegations contained in paragraphs 1-50 above as if fully set forth herein.

129.   Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant.

130.   As alleged herein, Defendant has intentionally and recklessly made misleading representations to Plaintiffs and members of the Classes to induce them to purchase the Products. Plaintiffs and members of the Classes have reasonably

**CLASS ACTION COMPLAINT**

relied on the misleading representations and have not received all of the benefits promised by Defendant. Plaintiffs and members of the Classes therefore have been induced by Defendant's misleading and deceptive representations about the Products, and paid more money to Defendant for the Products than they otherwise would and/or should have paid.

131.   Plaintiffs and members of the Classes have conferred a benefit upon Defendant as Defendant has retained monies paid to them by Plaintiffs and members of the Classes.

132.   The monies received were obtained under circumstances that were at the expense of Plaintiffs and members of the Classes – i.e., Plaintiffs and members of the Classes did not receive the full value of the benefit conferred upon Defendant.

133.   Therefore, it is inequitable and unjust for Defendant to retain the profit, benefit, or compensation conferred upon them without paying Plaintiffs and the members of the Classes back for the difference of the full value of the benefits compared to the value actually received.

134.   As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and members of the Classes are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant from its deceptive, misleading, and unlawful conduct as alleged herein.

**ELEVENTH CLAIM FOR RELIEF**
**Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.***
**Implied Warranty of Merchantability Under California Law**
(*for the Nationwide Class*)

135.   Plaintiffs repeat the allegations contained in paragraphs 1-50 above as if fully set forth herein.

136.   Plaintiffs bring this claim individually and on behalf of the proposed Nationwide Class.

**CLASS ACTION COMPLAINT**

137.   The Products are consumer products within the meaning of 15 U.S.C. § 2301(1).

138.   Plaintiffs and Class members are consumers within the meaning of 15 U.S.C. § 2301(3).

139.   Defendant is a supplier and warrantor within the meaning of 15 U.S.C. § 2301(4) and (5).

140.   In connection with the sale of the Products, Defendant issued an "implied warranty" within the meaning of 15 U.S.C. § 2301(7), which warranted that the Products could make up to a specific number of servings, when in fact the Products do not contain enough ground coffee to make up to the specific number of servings.

141.   By reason of Defendant's breach of implied warranty representing that the Products can make up to a specific number of servings, Defendant has violated the statutory rights due to Plaintiffs and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, thereby damaging Plaintiffs and Class members.

142.   Prior to filing this action, Plaintiffs, by and through their counsel, provided Defendant with written notice of their claims pursuant to 15 U.S.C. § 2310(e) and also notified Defendant that they were acting on behalf of a Class defined as all consumers who purchased the Products during the applicable statute of limitations period.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of the Class and Subclass, respectfully pray for following relief:

A.   Certification of this case as a class action on behalf of the Classes defined above, appointment of Plaintiffs as Class representatives, and appointment of their counsel as Class counsel;

B.     A declaration that Defendant's actions, as described herein, violate the claims described herein;

C.     An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the unlawful act described above;

D.     An award to Plaintiffs and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiffs and the proposed Classes as a result of its unlawful, unfair and fraudulent business practices described herein;

E.     An award of all economic, monetary, actual, consequential, compensatory, and treble damages caused by Defendant's conduct;

F.     An award of punitive damages;

G.     An award to Plaintiffs and their counsel of their reasonable expenses and attorneys' fees;

H.     An award to Plaintiffs and the proposed Classes of pre and post-judgment interest, to the extent allowable; and

I.     For such further relief that the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs, on behalf of themselves and the Classes, hereby demand a jury trial with respect to all issues triable of right by jury.


DATED:  May 7, 2020           **FARUQI AND FARUQI, LLP**


By: /s/ *Benjamin Heikali*
Benjamin Heikali
Joshua Nassir

The Wand Law Firm, P.C.

-30-
**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Aubry Wand

*Attorneys for Plaintiffs and the Putative Classes*

**CLASS ACTION COMPLAINT**

## <u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>

I, Shelly Ashton, declare as follows:

1.      I am a named Plaintiff in this action and a citizen of the State of California. I have personal knowledge of the facts stated herein and, if called as a witness, I could testify competently thereto.

2.      This Class Action Complaint is filed in the proper place of trial because I purchased the Products in this District.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on _____ at Beaumont, California.

5/7/2020 | 3:21 PM PDT

Shelly Ashton