**FARUQI & FARUQI, LLP**
Benjamin Heikali (SBN 307466)
*E-mail: bheikali@faruqilaw.com*
Joshua Nassir (SBN 318344)
*E-mail: jnassir@faruqilaw.com*
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone:   (424) 256-2884
Facsimile:   (424) 256-2885

**CARLSON LYNCH, LLP**
Todd D. Carpenter (SBN 234464)
*E-mail: tcarpenter@carlsonlynch.com*
Scott G. Braden (SBN 305051)
*E-mail: sbraden@carlsonlynch.com*
1350 Columbia Street, Suite 603
San Diego, CA 92101
Telephone:   (619) 762-1900
Facsimile:   (619) 756-6991

*Attorneys for Plaintiffs and the Putative Classes*

**THE WAND LAW FIRM, P.C.**
Aubry Wand (SBN 281207)
*E-mail: awand@wandlawfirm.com*
400 Corporate Pointe, Suite 300
Culver City, CA 90230
Telephone:   (310) 590-4503
Facsimile:   (310) 590-4596

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION

| | |
|---|---|
| SHELLY ASHTON, JAY SCHOENER, and RAMON IBARRA, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE J. M. SMUCKER COMPANY, an Ohio corporation; THE FOLGER COFFEE COMPANY, an Ohio corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO.: 5:20-cv-00992-JGB-SHK<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:   October 19, 2020<br>Time:   9:00 a.m.<br>Room:   1<br>Judge:   Hon. Jesus G. Bernal |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................................1

II.  LEGAL STANDARD ...........................................................................................1

III. ARGUMENT ........................................................................................................2

  A.   Plaintiffs Have Standing Under Rule 12(b)(1) ...............................................2

    1.   Plaintiffs Have Sufficiently Pleaded a Concrete Injury ...........................2

    2.   Plaintiffs Have Standing with Respect to Unpurchased Products............5

    3.   Plaintiffs Have Standing to Seek Injunctive Relief .................................7

    4.   Plaintiffs Have Standing to Bring Nationwide Claims and Attempts to Narrow these Claims are Premature ......................................................9

  B.   The Court Has Specific Personal Jurisdiction Over All Claims .............................. 10

  C.   Plaintiffs Adequately Plead Consumer Protection Claims....................................13

    1.   Whether the Serving Representation is Likely to Deceive a Reasonable Consumer is A Question of Fact .........................................................13

    2.   The "Up To" Statement Does Not Ameliorate Consumer Deception...................14

    3.   Defendants' Bulk-Brewing Argument is Inconsistent with the Reasonable Consumer Standard and It Fails on Its Own Terms............................................17

    4.   Plaintiffs Satisfy Rule 9(b) .....................................................................21

  D.   Plaintiffs Adequately Plead Breach of Warranty Claims.........................................21

    1.   Breach of Express Warranty....................................................................21

    2.   Breach of Implied Warranty ....................................................................22

  E.   Plaintiffs Adequately Plead an MMWA Claim.........................................................23

  F.   Plaintiffs Adequately Plead Common Law Claims ...................................................24

    1.   Intentional and Negligent Misrepresentation Claims .............................24

    2.   Quasi-Contract/Unjust Enrichment Claim ..............................................26

  G.   Plaintiffs' Claim for Equitable Relief Should Not be Dismissed.............................27

  H.   Plaintiffs' Request for Punitive Damages Should Not be Dismissed......................28

  I.   Defendants' Request to "Dismiss" Class Allegations is Improper.............................29

  IV.   CONCLUSION.................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 5-Hour ENERGY Mktg. & Sales Practices Litig.*,
2014 WL 5311272 (C.D. Cal. Sept. 4, 2014) ........................................ 5, 7

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
368 F.3d 1174 (9th Cir. 2004) ........................................................ 11, 12

*Allen v. ConAgra Foods, Inc.*,
2018 WL 6460451 (N.D. Cal. Dec. 10, 2018) .................................... 7, 12

*Allen v. Similasan Corp.*,
2013 WL 2120825 (S.D. Cal. May 14, 2013) ......................................... 12

*Anderson News, L.L.C. v. Am. Media, Inc.*,
680 F.3d 162 (2nd Cir. 2012) .............................................................. 18

*Ang v. Bimbo Bakeries USA, Inc.*,
2014 WL 1024182 (N.D. Cal. Mar. 13, 2014) .......................................... 6

*Arnott v. U.S. Citizenship and Immigration Services*,
290 F.R.D. 579 (C.D. Cal. 2012) .......................................................... 10

*Arthur v. United Indus. Corp.*,
2018 WL 1472500 (C.D. Cal. Mar. 23, 2018) ................................... *passim*

*Astiana v. Ben & Jerry's Homemade, Inc.*,
2011 WL 2111796 (N.D. Cal. May 26, 2011) .......................................... 25

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,
2012 WL 2990766 (N.D. Cal. July 20, 2012) ................................. 6, 7, 27

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) .............................................................. 27

*In re Bang Energy Drink Marketing Litig.*,
2020 WL 4458916 ..................................................................... 12, 13

*Becerra v. Gen. Motors LLC*,
241 F. Supp. 3d 1094 (S.D. Cal. 2017) .................................................. 26

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................... 2, 15

-ii-

*Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*,
   137 S. Ct. 1773 (2017)........................................................................ 10, 11, 12, 13

*Bros. v. Hewlett-Packard Co.*,
   2007 WL 485979 (N.D. Cal. Feb. 12, 2007) ............................................ 24

*Bruno v. Quten Research Inst., LLC*,
   280 F.R.D. 524 (C.D. Cal. 2011).......................................................... 16, 30

*Buonasera v. Honest Co., Inc.*,
   208 F. Supp. 3d 555 (S.D.N.Y. 2016) ..................................................... 22

*Cabrera v. Bayer Healthcare, LLC*,
   2019 WL 1146828 (C.D. Cal. Mar. 6, 2019)....................................... 11, 23

*Cahen v. Toyota Motor Corp.*,
   147 F. Supp. 3d 955 (N.D. Cal. 2015)................................................... 2, 5

*Carpenter v. PetSmart, Inc.*,
   441 F. Supp. 3d 1028 (S.D. Cal. 2020)................................................... 24

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
   2011 WL 159380 (N.D. Cal. Jan. 10, 2011)............................................. 7

*CE Distrib., LLC v. New Sensor Corp.*,
   380 F.3d 1107 (9th Cir. 2004) ............................................................... 13

*Chavez v. Wal-Mart Stores, Inc.*,
   2014 WL 12591244 (C.D. Cal. Mar. 3, 2014).......................................... 10

*Ciampichini v. Ring Bros.*,
   40 A.D. 2d 289, 339 N.Y.S. 2d 716 (1973) ............................................ 23

*Clancy v. The Bromley Tea Co.*,
   308 F.R.D. 564 (N.D. Cal. 2013)............................................................ 29

*Coffelt v. Kroger Co.*,
   2017 WL 10543343 (C.D. Cal. Jan. 27, 2017) (Bernal, J.)................... 3, 28

*Concha v. London*,
   62 F.3d 1493 (9th Cir. 1995) ................................................................. 25

*Consumer Advocates v. Echostar Satellite Corp.*,
   113 Cal. App. 4th 1351 (2003) .............................................................. 16

*Corcoran v. CVS Health Corp.*,
   169 F. Supp. 3d 970 (N.D. Cal. 2016).................................................... 27

*Cordes v. Boulder Brands USA, Inc.*,
  2018 WL 6714323 (C.D. Cal. Oct. 17, 2018) ........................................................... 9

*Cruson v. Jackson National Life Insurance Company*,
  954 F.3d 240 (5th Cir. 2020) ................................................................................... 11

*David v. Baker*,
  129 Fed. App'x 358 (9th. Cir. 2005) ......................................................................... 2

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018), cert. denied, 139 S. Ct. 640 (2018).................... 7, 8, 9

*Davis v. HSBC Bank Nevada, N.A.*,
  691 F.3d 1152 (9th Cir. 2012) ................................................................................. 13

*Dean v. Colgate-Palmolive Co.*,
  2015 WL 3999313 (C.D. Cal. June 17, 2015) (Bernal, J.) ...................................... 29

*Delgado v. Kornegay*,
  395 N.Y.S.2d 126 (Dist. Ct. 1977) ......................................................................... 23

*Ehret v. Uber Techs., Inc.*,
  68 F. Supp. 3d 1121 (N.D. Cal. 2014) ..................................................................... 14

*Estakhrian v. Obenstine*,
  233 F. Supp. 3d 824 (C.D. Cal. 2017) ..................................................................... 27

*Evans v. DSW, Inc.*,
  2017 WL 7058232 (C.D. Cal. Sept. 14, 2017) (Bernal, J.) ..................................... 28

*Evans v. DSW, Inc.*,
  2017 WL 7058233 (C.D. Cal. Feb. 2, 2017) (Bernal, J.) ................................... 15, 28

*Fantasy, Inc. v. Fogerty*,
  984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517
  (1994).......................................................................................................................... 28

*Forcellati v. Hyland's, Inc.*,
  876 F. Supp. 2d 1155 (C.D. Cal. 2012) .............................................................. 29, 30

*Frenzel v. Aliphcom*,
  2015 WL 4110811 (N.D. Cal. July 7, 2015) ........................................................... 16

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*,
  2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) .................................................... 5, 14

-iv-

*FTC v. Febre*,
   1996 WL 396117 (N.D. Ill. July 3, 1996) ................................................... 17

*Gadomski v. Equifax Information Services, LLC*,
   2020 WL 3841041 (E.D. Cal. Jul. 8, 2020) ............................................... 13

*Garrison v. Whole Foods Mkt. Grp., Inc.*,
   2014 WL 2451290 (N.D. Cal. June 2, 2014) ................................................ 9

*Gerritsen v. Warner Bros. Entm't Inc.*,
   112 F.Supp.3d 1011 (C.D. Cal. 2015) ...................................................... 17

*Golden v. Home Depot, U.S.A, Inc.*,
   2018 WL 2441580 (E.D. Cal. May 31, 2018) ............................................... 5

*Grace v. Apple Inc.*,
   2017 WL 3232464 (N.D. Cal. July 28, 2017) ............................................. 27

*Hendricks v. StarKist Co.*,
   30 F. Supp. 3d 917 (2014) ............................................................... 6, 7

*Herron v. Best Buy Co. Inc.*,
   924 F. Supp. 2d 1161 (E.D. Cal. 2013) .................................................... 16

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013) ............................................................. 3

*Jager v. Davol Inc.*,
   2016 WL 6157942 (C.D. Cal. Oct. 20, 2016) (Bernal, J.) ............................... 29

*Kanfer v. Pharmacare US, Inc.*,
   142 F. Supp. 3d 1091 (S.D. Cal. 2015) .................................................... 14

*Keegan v. Am. Honda Motor Co., Inc.*,
   838 F. Supp. 2d 929 (C.D. Cal. 2012) .................................................... 24

*Kosta v. Del Monte Corp.*,
   2013 WL 2147413 (N.D. Cal. May 15, 2013) ............................................... 7

*Larsen v. Trader Joe's Co.*,
   2012 WL 5458396 (N.D. Cal. June 14, 2012) .............................................. 6

*Lassen v. Nissan North America, Inc.*,
   211 F. Supp. 3d 1267 (C.D. Cal. Sep. 30, 2016) .......................................... 5

*Longest v. Green Tree Servicing LLC*,
   74 F. Supp. 3d 1289 (C.D. Cal. 2015) .................................................... 26

*Lozano v. AT&T Wireless Servs, Inc*,
  504 F.3d 718 (9th Cir. 2007) ................................................................. 14

*Luong v. Subaru of Am., Inc.*,
  2018 WL 2047646 (N.D. Cal. May 2, 2018) ...................................... 25, 27

*Lytle v. Nutramax Laboratories, Inc.*,
  2019 WL 8060077 (C.D. Cal. Dec. 6, 2019) (Bernal, J.) ................. *passim*

*Mack v. LLR, Inc.*,
  2018 WL 6927860 (C.D. Cal. Aug. 15, 2018) (Bernal, J.) ............... 23, 29

*Marcus v. AT&T Corp.*,
  138 F.3d 46 (2d Cir. 1998) .................................................................. 14

*Martin v. Monsanto Co.*,
  2017 WL 659014 (C.D. Cal. Feb. 16, 2017) ...................................... 19, 22

*Mazza v. Am. Honda Motor Co., Inc.*,
  666 F.3d 581 (9th Cir. 2012) .............................................................. 29, 30

*In Re: McCormick & Company, Inc., Pepper Products Marketing and Sales
  Practices Litig.*,
  422 F. Supp. 3d 194 (D.C. Jul. 10, 2019) .............................................. 3

*McCoy v. Nestle USA, Inc.*,
  173 F. Supp. 3d 954 (N.D. Cal. 2016) ................................................ 4, 5

*McCrary v. Elations Co., LLC*,
  2013 WL 6402217 (C.D. Cal. Apr. 24, 2013) (Bernal, J.) ...................... 14

*McDonnell Douglas Corp. v. Thiokol Corp.*,
  124 F.3d 1173 (9th Cir. 1997) .............................................................. 22

*Michael v. Honest Co., Inc.*,
  2016 WL 8902574 (C.D. Cal. Dec. 6, 2016) ...................................... 6, 23

*Molock v. Whole Foods Market Group*,
  952 F.3d 293 (D.C. Cir. 2020) ............................................................. 11

*Morgan v. Apple Inc.*,
  2018 WL 2234537 (N.D. Cal. May 16, 2018) ...................................... 24

*Morley v. Walker*,
  175 F.3d 756 (9th Cir. 1999) ................................................................ 2

-vi-

*Munning v. Gap, Inc.*,
    238 F. Supp. 3d 1195 (N.D. Cal. 2017)....................................................... 28

*Mussat v. IQVIA, Inc.*,
    953 F.3d 441 (7th Cir. 2020) .......................................................................... 11

*Pels v. Keurig Dr. Pepper, Inc.*,
    2019 WL 5813422 (N.D. Cal. Nov. 7, 2019) ............................................... 4, 5

*In re POM Wonderful LLC Mktg. & Sales Pratices Litig.*,
    2012 WL 4490860 (C.D. Cal. Sept. 28, 2012) ............................................. 30

*Praxair, Inc. v. General Insulation Co.*,
    611 F. Supp. 2d 318 (W.D.N.Y. 2009)......................................................... 23

*Quinn v. Walgreen Co.*,
    958 F. Supp. 2d 533 (S.D.N.Y. 2013) .......................................................... 14

*Rahman v. Mott's LLP*,
    2018 WL 4585024 (N.D. Cal. Sept. 25, 2018) ............................................... 9

*Rawa v. Monsanto Co.*,
    2017 WL 3392090 (E.D. Mo. Aug. 7, 2017).................................................. 19

*Rees v. PNC Bank, N.A.*,
    308 F.R.D. 266 (N.D. Cal. 2015).................................................................... 29

*Rep. of the Phil. v. Marcos*,
    862 F. 2d 1355 (9th Cir. 1988) ..................................................................... 11

*Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*,
    768 F.3d 938 (9th Cir. 2014) .......................................................................... 2

*Rhodeman v. Ocwen Loan Servicing, LLC*,
    2019 WL 5955368 (C.D. Cal. Nov. 12, 2019) (Bernal, J.) ...................... 26

*Rice-Sherman v. Big Heart Pet Brands, Inc.*,
    2020 WL 1245130 (N.D. Cal. Mar. 16, 2020) ........................................... 4, 5

*Roberts v. Electrolux Home Prod., Inc.*,
    2013 WL 7753579 (C.D. Cal. Mar. 4, 2013)................................................ 23

*Robinson Helicopter Co. v. Dana Corp.*,
    34 Cal. 4th 979 (2004) .................................................................................... 26

*Robinson v. J.M. Smucker Co.*,
    2019 WL 2029069 (N.D. Cal. May 8, 2019)................................................... 8

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ............................................................ 1

*Shank v. Presidio Brands, Inc.*,
   2018 WL 1948830 (N.D. Cal. Apr. 25, 2018) .................................... 8

*Shapiro v. AT&T Mobility, LLC*,
   2020 WL 4341778 (C.D. Cal. May 18, 2020) .................................. 28

*Sherwin-Williams Co. v. JB Collision Servs., Inc.*,
   2015 WL 3999030 (S.D. Cal. June 30, 2015) .................................. 25

*Singleton v. Fifth Generation, Inc.*,
   2016 WL 406295 (N.D.N.Y. Jan. 12, 2016) ..................................... 25

*Sotomayor v. Bank of Am., N.A.*,
   377 F. Supp. 3d 1034 (C.D. Cal. 2019) ........................................... 13

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) .......................................................... 18

*Strumlauf v. Starbucks Corp.*,
   192 F. Supp. 3d 1025 (N.D. Cal. 2016) ............................. 3, 4, 5, 21

*Tears v. Boston Scientific Corp.*,
   344 F. Supp. 3d 500 (S.D.N.Y. 2018) ............................................. 22

*Thompson Med. Co., Inc. v. Ciba–Geigy Corp.*,
   643 F. Supp. 1190 (S.D.N.Y. 1986) ................................................ 16

*U.S. v. Zaken Corp.*,
   57 F. Supp. 3d 1233 (2014) .............................................................. 17

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) .......................................................... 21

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................................ 9

*Wallace v. ConAgra Foods, Inc.*,
   747 F.3d 1025 (8th Cir. 2014) ............................................................ 4

*Walter v. Hughes Comm'cns, Inc.*,
   682 F. Supp. 2d 1031 (N.D. Cal. 2010) .......................................... 16

*Warren v. Fox Family Worldwide, Inc.*,
   328 F.3d 1136 (9th Cir. 2003) ............................................................ 2

*Weinstat v. Dentsply Internat., Inc.*,
   180 Cal. App. 4th 1213 (2010) ................................................................. 22

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
   127 F. Supp. 3d 156 (S.D.N.Y. 2015) ...................................................... 19

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ..................................................... 8, 14, 15, 19

*Wisdom v. Easton Diamond Sports, LLC*,
   2019 WL 580670 (C.D. Cal. Feb. 11, 2019) ............................................... 7

*Zakaria v. Gerber Prod. Co.*,
   2015 WL 3827654 (C.D. Cal. June 18, 2015) .......................................... 26

*Zeiger v. WellPet LLC*,
   304 F. Supp. 3d 837 (N.D. Cal. 2018) ...................................................... 13

*Zuehlsdorf v. FCA US LLC*,
   2019 WL 4422673 (C.D. Cal. Aug. 7, 2019) (Bernal, J.) ......................... 10

**Statutes**

15 U.S.C. § 2301, *et seq.* ................................................................................. 13

15 U.S.C. § 2310(d)(3) .................................................................................... 24

**Other Authorities**

Fed. R. Civ. P. 9 .............................................................................................. 28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.   <u>INTRODUCTION</u>

Plaintiffs' theory of liability, as articulated in the First Amended Complaint ("FAC"), is straightforward: Defendants advertise on the front packaging of each of their Folgers ground coffee canisters ("Products") that they can make up to a specific number of 6 oz. cups of coffee ("Serving Representation"), but in actuality, they contain on average just 68.25% of the ground coffee required to make the represented number of cups. Thus, the Serving Representation is false and deceptive and likely to mislead a reasonable consumer.

While Defendants advance a multitude of arguments, the crux of their Motion to Dismiss ("MTD") is that consumers cannot be deceived, as a matter of law, because the phrase "up to" precedes the Serving Representation and the brewing instructions on the Products are open to more than one interpretation. However, ample legal authority, and common sense, dictate that tacking on the words "up to" before a representation does not change a consumer's reasonable belief that the product can satisfy that representation. That is particularly true here, where the "up to" phrase is meaningless because the Products contain such an immense shortfall of ground coffee that a consumer could never reasonably make close to the "up to" number of servings represented. Defendants' contrived argument that consumers will brew coffee in bulk based on the back-label instructions also fails for several reasons, not the least of which is that reasonable consumers follow Plaintiffs' common-sense reading of the brewing instructions. And even if the Court were to accept Defendants' bulk-brewing interpretation, which itself presents a factual inquiry, there would still be a material shortfall of ground coffee. Accordingly, Plaintiffs respectfully request that the Court deny the MTD.

## II.   <u>LEGAL STANDARD</u>

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* Here,

Defendants' jurisdictional challenge is facial. Thus, all material allegations in the complaint must be taken as a true and construed in the light most favorable to Plaintiffs. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

On a motion to dismiss pursuant to Rule 12(b)(6), it is the defendant's burden to show that the plaintiff cannot state a claim for relief. *David v. Baker*, 129 Fed. App'x 358, 360 (9th. Cir. 2005). The court "must accept as true" all well pleaded facts in the complaint and construe them in the light most favorable to the nonmoving party. *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). To survive a motion to dismiss, the plaintiff must only allege enough facts to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "A dismissal for failure to state a claim is appropriate only where it appears, beyond doubt, that the plaintiff can prove no set of facts that would entitle it to relief." *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

### III.   ARGUMENT

**A.   Plaintiffs Have Standing Under Rule 12(b)(1)**

####   1.   Plaintiffs Have Sufficiently Pleaded a Concrete Injury

Defendants do not dispute (nor could they) that Plaintiffs allege that they saw and relied on the Serving Representation in making their decisions to purchase the Products, and that they paid more for the Products based on the Serving Representation. FAC ¶¶ 9-11. The dispositive question, then, is whether these allegations sufficiently plead a financial injury and a causal connection. They do.

As an initial matter, the standing burden at the pleadings stage is modest, and general allegations of economic injury suffice. *Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 966 (N.D. Cal. 2015) ("A plaintiff bears the burden of establishing standing, but that burden is low at the pleading stage, where 'general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.'" (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

When "'[p]laintiffs contend that class members paid more for [a product] than they otherwise would have paid, or bought it when they otherwise would not have done so' they have suffered an Article III injury in fact." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013). Plaintiffs' allegations that they paid more for the Products based on the Serving Representation clearly meet this Article III standing requirement. These allegations also establish statutory standing. *Coffelt v. Kroger Co.*, 2017 WL 10543343, at *5 (C.D. Cal. Jan. 27, 2017) (Bernal, J.) ("[T]o have standing under the UCL or CLRA, Plaintiff must sufficiently allege (1) that he suffered an economic injury, and (b) that he actually relied on the purported material misrepresentation."). In addition to the economic injury described above, Plaintiffs allege reliance, or a causal connection. *See* FAC ¶¶ 9-11 ("In purchasing the Products, Plaintiff [ ] saw and relied on Defendants' representations made on the packaging."). This Court has held that similar allegations are sufficient to confer both statutory and constitutional standing. *Coffelt*, 2017 WL 10543343, at *5.

Defendants attempt an end-run around this conclusion by arguing that Plaintiffs lack standing because they fail to allege the actual Products they purchased were incapable of making the number of cups represented.[1] MTD at 5. But this is not a requirement for standing. *Strumlauf v. Starbucks Corp.*, 192 F. Supp. 3d 1025 (N.D. Cal. 2016) is directly on point. There, plaintiffs alleged that Starbucks uniformly underfilled lattes and that they would not have purchased them had they known the lattes were not the volume represented. *Id.* at 1028. Starbucks similarly argued that plaintiffs lacked Article III standing on the grounds that

---

[1] To the extent the argument is construed as such, the supposition that Plaintiffs need to allege personal knowledge about Defendants' unlawful conduct is incorrect. *See In Re: McCormick & Company, Inc., Pepper Products Marketing and Sales Practices Litig.*, 422 F. Supp. 3d 194, 246 (D.C. Jul. 10, 2019) (recognizing "plaintiffs cannot be criticized for their inability to testify to actual fill levels since this inability is attributable to the success of defendants' deception" in a slack-fill case). And as this Court has recognized, to the extent arguments in a motion to dismiss are related to adequacy of the plaintiff or the superiority of classwide adjudication, they are "better resolved at the class certification stage," and to the extent arguments "speak to evidentiary frailties or the proper measure or attribution of damages, such assertions pertain to matters outside the pleadings." *Coffelt*, 2017 WL 10543343, at *10.

they failed to allege that the particular lattes they purchased were underfilled. *Id.* at 1029. The court rejected this argument because plaintiffs alleged that Starbucks uniformly underfilled lattes. *Id.* at 1030. Therefore, it was reasonable to conclude that plaintiffs' lattes were underfilled, even without plaintiffs measuring their own particular lattes. *Id*. The same is true here, as Plaintiffs allege that the Products are ***uniformly*** under-filled with coffee. FAC ¶¶ 20-23; *see also McCoy v. Nestle USA, Inc.*, 173 F. Supp. 3d 954, 964-65 (N.D. Cal. 2016) (rejecting argument that plaintiff lacked standing for not alleging that she was "certain" that the "objectionable practice" in question "was used to produce the specific item" that she purchased, holding that "such expectation would undermine" Ninth Circuit and California Supreme Court precedent).

*Rice-Sherman v. Big Heart Pet Brands, Inc.*, 2020 WL 1245130 (N.D. Cal. Mar. 16, 2020) provides a well-reasoned analysis rejecting a nearly identical argument advanced by the same counsel for Defendants here. There, plaintiffs had Article III standing based on allegations that they saw the alleged misrepresentations and would not have purchased the pet food had they known that it contained grain, corn, or soy protein. *Id.* at *6. The court, citing cases in "the food labeling context" which held that such allegations are "sufficient to establish an economic injury for purposes of both constitutional and statutory standing," rejected defendant's argument that plaintiffs were required to test the specific products they purchased. *Id.* at *5-6. In doing so, the court distinguished *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025 (8th Cir. 2014) and *Pels v. Keurig Dr. Pepper, Inc.*, 2019 WL 5813422 (N.D. Cal. Nov. 7, 2019)—the primary authority Defendants rely on here. First, the court noted *Wallace* does not reflect the law of the Ninth Circuit. *Rice-Sherman*, 2020 WL 1245130 at *6. Next, the court distinguished both *Wallace* and *Pels* on the grounds that in both cases the plaintiffs failed to allege that "'all or even most' of the accused products were falsely advertised… [and] [t]hey lacked standing because it was merely speculative whether they purchased any non-kosher hot dogs or non-arsenic Peñafiel mineral spring water."[2] *Id.* at *7.

---

[2] *Cahen* and *Lassen v. Nissan North America, Inc.*, 211 F. Supp. 3d 1267, 1284 (C.D. Cal. Sep. 30, 2016), the other cases Defendants cite, are distinguishable for similar

In contrast, even though the *Rice-Sherman* plaintiffs did not use the word "all," the court held that a "fair reading of their FAC shows that they allege that all Nature's Food Recipe products are falsely advertised." *Id.*

Here, the FAC provides: (1) details regarding the specific Products that Plaintiffs bought (FAC ¶¶ 9-11), (2) alleges that *all* of the Products have a uniform Serving Representation (*Id.* ¶¶ 20-22), (3) explains how there is a shortfall in ground coffee in *each* of the Products (*Id.* ¶¶ 23-32), and (4) states the specific shortfall in ground coffee that exists in each and every one of the Products (*Id.* ¶¶ 33-34). These allegations are stronger and more detailed than those in *Strumlauf*, *McCoy*, and *Rice-Sherman*. Thus, Plaintiffs have clearly alleged injury and causation for the purposes of standing as to the Products they purchased.

### 2. Plaintiffs Have Standing with Respect to Unpurchased Products

Plaintiffs have standing with respect to the Products they did not purchase under the "substantially similar product" theory, which is the dominant view in the Ninth Circuit. *See*, *e.g.*, *In re 5-Hour ENERGY Mktg. & Sales Practices Litig.*, 2014 WL 5311272, at *7 (C.D. Cal. Sept. 4, 2014) (the "'prevailing view' in the Ninth Circuit" is that class action plaintiffs can bring claims for products they did not purchase "as long as the products and alleged misrepresentations are substantially similar."); *Golden v. Home Depot, U.S.A, Inc.*, 2018 WL 2441580, at *15 (E.D. Cal. May 31, 2018) (the "substantially similar" standard "appears to be the majority rule applied by federal courts in California and in this District.").

The Court can consider a variety of factors—including "similarity in products, similarity in claims, similarities in injury to consumers—to determine which unpurchased products can be included by plaintiffs in their class actions." *Ang v. Bimbo Bakeries USA, Inc.*, 2014 WL 1024182, at *6 (N.D. Cal. Mar. 13, 2014). Each of these considerations militate in Plaintiffs' favor here. First, this case involves the same type of consumer goods—

---

reasons. In *Cahen*, the plaintiffs made speculative allegations that software in certain cars was subject to hacking, but failed to allege any hacking occurred outside of controlled experiments. 147 F. Supp. 3d at 966, 968. Thus, the court was concerned with whether a "future risk of harm" was too speculative–not that the plaintiffs failed to allege the specific cars they purchased were hacked. *Id.* at 966-71. Similar, in *Lassen*, the plaintiffs made no allegations that the keyless fob systems in the cars they purchased malfunctioned, making their injuries speculative. 211 F. Supp. 3d at 1284.

ground coffee. Second, the challenged Serving Representations are materially identical across each Product—the only variance is the actual number of cups promised by the Serving Representation, which depends on the canister's size. Third, Plaintiffs' theory of liability is uniform—each consumer has been induced to pay more for the Product based on the mistaken but reasonable belief that it contained substantially more ground coffee than advertised. On these allegations, the Court should find that the Products are substantially similar for purposes of standing. *See e.g., See Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 935 (2014) (substantial similarity between varieties of canned tuna based on slack-fill claim); *Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012) (substantial similarity between varieties of ice cream flavors, despite different ingredients, based on "All Natural" claim).

Moreover, Defendants in no way explain why Plaintiffs lack standing, and the only authority they cite is distinguishable. *Larsen v. Trader Joe's Co.*, 2012 WL 5458396, at *1 (N.D. Cal. June 14, 2012) is inapposite because the plaintiffs challenged a range of vastly different products (apple juice, biscuits, ricotta cheese, etc.). This mattered because the case involved "all natural" claims, a consumer's understanding of which is likely to vary between apple juice or ricotta cheese. *See, e.g., Michael v. Honest Co., Inc.*, 2016 WL 8902574, at *8 (C.D. Cal. Dec. 6, 2016) ("Where product composition is less important, the cases turn on whether the alleged misrepresentations are sufficiently similar across product lines.").[3] Here, by contrast, product composition is not important, as Plaintiffs' claims are unaffected by the coffee variety. *See Astiana*, 2012 WL 2990766, at *13 (recognizing this distinction). Defendants' reliance on *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 2011 WL 159380 (N.D. Cal. Jan. 10, 2011), aff'd, 475 F. App'x 113 (9th Cir. 2012) fares no better. There, with no analysis, the court dismissed the complaint because the Drumstick ice cream product the plaintiff purchased made different claims (e.g., "The Original" and "Classic") from those on

---

[3] The *Michael* court reached the opposite conclusion from *Larsen* on largely the same facts. *See id.* at *11 (substantial similarity between diapers, cleaner, hand soap, and sunscreen, because defendant's marketing campaign invoked a common theme that all of the product were "natural" and "the same harm has been caused to all consumers of the products.").

1   the Dibs product he did not purchase. *Id.* at *1-3; *see also Hendricks*, 30 F. Supp. 3d at 935

2   (recognizing this distinction). These discrepancies do not exist in this case, where the

3   Products are substantially similar (both in kind and labeling), and the theory of liability and

4   injury is the same.[4]

### 3.    Plaintiffs Have Standing to Seek Injunctive Relief

6        Defendants summarily contend that Plaintiffs lack standing to seek injunctive relief

7   because they are now aware that the Serving Representation is deceptive and "there cannot be

8   the same harm in the future." MTD at 8. However, Defendants do not cite, much less discuss,

9   *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018), cert. denied, 139 S. Ct.

10   640 (2018), where the Ninth Circuit expressly rejected that premise: "[k]nowledge that the

11   advertisement or label was false in the past does not equate to knowledge that it will remain

12   false in the future." Thus, standing to pursue injunctive relief in a consumer class action may

13   lie in two situations, *id.* at 969-70, both of which are satisfied in the FAC.

14        First, "the threat of future harm may be the consumer's plausible allegations that she

15   will be unable to rely on the product's advertising or labeling in the future, and so will not

16   purchase the product although she would like to." *Id.* This is precisely what Plaintiffs allege.

17   *See* FAC ¶ 13. Numerous courts following *Davidson* have held that similar allegations are

18   sufficient to confer Article III standing to pursue injunctive relief. *See*, *e.g.*, *Allen v. ConAgra*

19   *Foods, Inc.*, 2018 WL 6460451, at *13 (N.D. Cal. Dec. 10, 2018); *Wisdom v. Easton*

20   *Diamond Sports, LLC*, 2019 WL 580670, at *3 (C.D. Cal. Feb. 11, 2019); *Robinson v. J.M.*

21   *Smucker Co.*, 2019 WL 2029069, at *4 (N.D. Cal. May 8, 2019). To the extent Defendants

22   argue on reply that Plaintiffs can confirm a shortfall of ground coffee by examining the

23   Product packaging, such an argument would fail on factual and legal grounds. As a factual

24   matter, Defendants' reasoning that Plaintiffs need to measure the amount of ground coffee in

---

[4] Alternatively, the Court could defer ruling on the issue until class certification. *See, e.g., Kosta v. Del Monte Corp.*, 2013 WL 2147413, at *15 (N.D. Cal. May 15, 2013). At that time, Defendants can advance the same argument and the Court will be in a better position to "gauge the typicality of [Plaintiffs'] claims and [Plaintiffs'] ability to adequately represent the interests of the proposed class[ ]." *5-Hour ENERGY*, 2014 WL 5311272, at *7.

specific Products to disprove the veracity of the Serving Representation, discussed *supra* at section III.A.1, would require Plaintiffs to actually purchase the Product and then perform calculations (*see*, *e.g.*, FAC ¶¶ 27-32) which Defendants call a "math equation." Plaintiffs cannot not be expected to perform math equations at the time of purchase just to be sure that the product is truthfully advertised. As a legal matter, the argument is irreconcilable with *Davidson*'s holding that a consumer's inability to rely with confidence on a representation is a tangible harm. This harm exists regardless of whether a consumer could fact-check the representation. *See*, *e.g.*, *Shank v. Presidio Brands, Inc.*, 2018 WL 1948830, at *5 (N.D. Cal. Apr. 25, 2018) (explaining that *Davidson* favorably cited *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 527 (N.D. Cal. 2012), which held that a false representation about a product can lead to a consumer's reluctance to rely on the labeling in the future even if the representation can be verified by an ingredient list). In any event, Ninth Circuit law recognizes that a consumer is not expected to review back labels to verify prominent representations on the front in the context of standing for injunctive relief. *See Shank*, 2018 WL 1948830, at *5 (recognizing that *Davidson* relied on *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) for this proposition).

Second, allegations that a consumer "***might*** purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved" are sufficient to confer standing to seek injunctive relief. *Davidson*, 873 F.3d at 969-70 (emphasis added). Thus, based on a plain reading of *Davidson*, Plaintiffs are not required to allege a present intent to purchase the Products again, as Defendants suggest. And as in *Davidson*, Plaintiffs plausibly allege that they face concrete and imminent future harm because they may purchase the products again in the future. *See* FAC ¶ 12.

Finally, Defendants rely on three cases, none of which advance their cause. *Racies*, 2015 WL 2398268, is of no help because it predates *Davidson* and it is factually distinguishable because there were no allegations that the plaintiff could possibly purchase the product again. Similarly, in *Cordes v. Boulder Brands USA, Inc.*, 2018 WL 6714323

(C.D. Cal. Oct. 17, 2018), the plaintiff failed to allege any interest in purchasing the subject product in the future. *Id.* at *4. *Rahman v. Mott's LLP*, 2018 WL 4585024 (N.D. Cal. Sept. 25, 2018) is also distinguishable on its facts. The plaintiff alleged that Mott's "'No Sugar Added'" claim was deceptive because it meant that Mott's was healthier than other 100% apple juices. *Id.* at *3. The plaintiff, however, contradicted this allegation, testifying at deposition that he became aware that "'No Sugar Added'" "[did] not indicate that Mott's 100% Apple Juice contain[ed] less sugar than or [was] healthier than other 100 percent apple juices." *Id.* On that basis, the court determined that "even if plaintiff were misled," he was "now aware that such a belief was unfounded." *Id.* No such denouncement by Plaintiffs at deposition has occurred here.

### 4. Plaintiffs Have Standing to Bring Nationwide Claims and Attempts to Narrow these Claims are Premature

Defendants contend that Plaintiffs lack standing to seek relief on behalf of putative class members living in the 48 other states because under Rule 23, Plaintiffs cannot assert claims that they could not pursue in their own right. MTD at 8. To the contrary, it is well-established that class actions are an exception to the general rule that one person cannot litigate injuries on behalf of another. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). Thus, plaintiffs in class actions can litigate injuries that they themselves would not have standing to litigate as long as the plaintiffs have standing to pursue their individual claims. *See Garrison v. Whole Foods Mkt. Grp., Inc.*, 2014 WL 2451290, at *4 (N.D. Cal. June 2, 2014) ("In fact, '[e]very time a lead plaintiff prosecutes an action on behalf of a class, she brings claims based on injuries she did not personally suffer—in other words, claims she could not have advanced individually.'"). Here, the allegations of Defendants' unlawful conduct are based on a common injury suffered by Plaintiffs and Class members alike. In short, "[i]t is improper for this Court to analyze unnamed class members' Article III standing where, as here, Defendants do not successfully challenge the putative class representatives' standing," *Arnott v. U.S. Citizenship and Immigration Services*, 290 F.R.D. 579, 584 (C.D. Cal. 2012) (citing *Lewis v. Casey*, 518 U.S. 343, 395 (1996) (Souter, J., concurring)).

Defendants conflate the concept of standing with a choice of law analysis. *See Chavez v. Wal-Mart Stores, Inc.*, 2014 WL 12591244, at *2 (C.D. Cal. Mar. 3, 2014) (rejecting same argument and noting that "Wal-Mart appears to conflate the concept of standing with choice-of-law analysis. The issue here is not whether the Article III standing requirements are met, but whether California law can apply to non-resident class members" and finding a choice of law analysis premature at this stage). Because Defendants' argument boils down to a matter of choice of law—discussed *infra* at section III.I — it can and should be addressed at class certification.

**B.  The Court Has Specific Personal Jurisdiction Over All Claims**

**1.  The Court Has Personal Jurisdiction Over the Claims of Non-Resident Class Members**

Defendants argue that the Court lacks specific personal jurisdiction over the claims of non-resident Class members. This argument hinges on whether *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773 (2017) ("*BMS*") alters extant Ninth Circuit law that federal courts have specific personal jurisdiction over absent class members' claims. It does not.

In *Zuehlsdorf v. FCA US LLC*, 2019 WL 4422673, at *6 (C.D. Cal. Aug. 7, 2019) (Bernal, J.), this Court held, consistent with the majority opinion in this Circuit (both then and now), that *BMS* does not apply to class actions pending in federal court on the grounds that: (1) *BMS* involved a mass action where each party is a real party in interest thus distinguishing it from a class action, and (2) Rule 23 imposes due process safeguards on class actions that do not exist in the mass tort context. Since *Zuehlsdorf*, no appellate court has held that *BMS* applies to class actions pending in federal court, while the only three appellate courts to have addressed the issue have held that either *BMS* does not apply federal court class actions with respect to absent class members, *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 443 (7th Cir. 2020), or that the issue should be addressed at class certification. *See Molock v. Whole Foods Market Group*, 952 F.3d 293, 298 (D.C. Cir. 2020); *Cruson v. Jackson National Life Insurance*

1  *Company*, 954 F.3d 240, 250 (5th Cir. 2020).[5] In sum, nothing in the landscape has changed

2  to cause the Court to deviate from its view that *BMS* does not apply to the claims of non-

3  resident class members.

### 2.      The Court Should Exercise Pendent Personal Jurisdiction Over Plaintiff Schoener's Claims

6       To the extent the Court concludes it lacks specific personal jurisdiction over the claims

7  of Plaintiff Schoener (a New York resident), it can and should exercise pendent personal

8  jurisdiction over his claims.[6] The doctrine of pendent personal jurisdiction permits a district

9  court to exercise personal jurisdiction over "a claim for which there is no independent basis of

10  personal jurisdiction so long as it arises out of a common nucleus of operative facts with a

11  claim in the same suit over which the court does have personal jurisdiction." *Action*

12  *Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004).

13       Defendants do not dispute that the Court has specific personal jurisdiction over

14  Plaintiffs Ashton and Ibarra and all California Subclass members. Nor can they dispute that

15  Plaintiff Schoener's claims arise out of the same nucleus of operative facts as those asserted

16  by Plaintiffs Ashton and Ibarra. The claims are sufficiently factually-related that a plaintiff

17  "'would ordinarily be expected to try them all in one judicial proceeding.'" *Rep. of the Phil.*

18  *v. Marcos*, 862 F. 2d 1355, 1359 (9th Cir. 1988) (citation omitted). The alternative (dismissal

19  of Plaintiff Schoener's claims on jurisdictional grounds) would result in competing class

20  actions predicated on the same course of conduct simultaneously pending in two different

21  courts against the same defendants. Thus, exercising pendent personal jurisdiction here

22  advances judicial economy, avoids piecemeal litigation, and promotes fairness to litigants—

23  the other relevant factor to consider. *See Action Embroidery Corp.*, 368 F.3d at 1181

24  ("[w]hen a defendant must appear in a forum to defend against one claim, it is often

---

[5] Defendants summarily cite two cases for the proposition that "a growing line of district courts have applied [*BMS*] to class actions." MTD at 11. However, in one of those cases, *Cabrera v. Bayer Healthcare, LLC*, 2019 WL 1146828, at *8 (C.D. Cal. Mar. 6, 2019), the court expressly held that *BMS **does not apply*** to class actions.

[6] For the same reasons, if the Court concludes that *BMS* applies to absent Class members (it should not), the Court should also exercise pendent personal jurisdiction over their claims.

reasonable to compel that defendant to answer other claims in the same suit arising out of a common nucleus of operative facts."). And although *BMS* does not apply, application of pendent personal jurisdiction is consistent with the "primary concern" in *BMS*, which was the burden it might pose on the defendant to litigate in the plaintiff's chosen forum. *BMS*, 137 S.Ct. at 1780. Assuming Plaintiff Schoener's claims are permitted to proceed, Defendants will experience no burden to litigate Plaintiff Schoener's claims in this forum, because they will already have to litigate Plaintiffs Ashton and Ibarra's claims here.

Indeed, several courts have exercised pendent personal jurisdiction over an out-of-state named plaintiff's claims in false advertising class actions. *See*, *e.g.*, *Conagra Foods, Inc.*, 2018 WL 6460451, at *7-8 (exercising pendent personal jurisdiction over out-of-state plaintiff and class members' state law claims because they were based on the same nucleus of operative facts as the in-state plaintiff's state law claims, and there would be "*de minimis* burden on the defendant, who would otherwise face piecemeal litigation."); *Allen v. Similasan Corp.*, 2013 WL 2120825, at *3 (S.D. Cal. May 14, 2013) (exercising pendent personal jurisdiction over non-resident plaintiff's claims because his "claims arise out of the same common nucleus of operative fact as [the other plaintiff's] claims, for which the Court does have jurisdiction over the defendant [and] [t]here is no prejudice to [defendant] in hearing both cases together."); *In re Bang Energy Drink Marketing Litig.*, 2020 WL 4458916, at *6-7 (exercising pendent personal jurisdiction over a New York plaintiff's breach-of-express-warranty claim because it arose out of the same nucleus of operative facts as the California plaintiffs' claims).

Finally, contrary to the foregoing three cases—all of which involved only state law claims—some courts believe that a federal claim must be present to assert pendent personal jurisdiction in the class action context. However, that should not dissuade the Court from doing so here. Nothing in *Action Embroidery Corp.*, 368 F.3d at 1181 ("[p]endent personal jurisdiction is ***typically found***" in federal question cases) (emphasis added) requires a federal claim to exercise pendent personal jurisdiction. Moreover, whether to exercise pendent personal jurisdiction rests within the sound discretion of the district court. *CE Distrib., LLC v.*

-12-

1  *New Sensor Corp.*, 380 F.3d 1107, 1113 (9th Cir. 2004). Regardless, Plaintiffs allege a

2  Magnuson-Moss Warranty Act ("MMWA") claim, 15 U.S.C. § 2301, *et seq.*, which confers

3  federal question jurisdiction.[7]

4  **C.   Plaintiffs Adequately Plead Consumer Protection Claims**

5       The lynchpin of Defendants' argument is that the Serving Representation is preceded

6  by an "up to" phrase and the brewing instructions are "open to obvious alternative

7  explanations." MTD at 14. Consequently, a reasonable consumer could not be deceived as a

8  matter of law, and Plaintiffs' statutory consumer protection claims should be dismissed. *Id.*

9  at 14-17. These twin arguments – both of which hinge on a factual inquiry regarding a

10 reasonable consumer's interpretation – fail on multiple levels.

11
12      **1.   Whether the Serving Representation is Likely to Deceive a Reasonable Consumer is A Question of Fact**

13      California's CLRA, UCL,[8] and FAL, as well as New York's GBL §§ 349 and 350, all

14 prohibit false, deceptive, or unfair conduct in trade or commerce and courts apply the

15 "reasonable consumer" standard to determine whether a representation is false or misleading.

16 *Williams*, 552 F.3d at 938; *Marcus v. AT&T Corp.*, 138 F.3d 46, 64 (2d Cir. 1998). Under the

---

17 [7] Alternatively, the Court has the discretion to defer ruling on these jurisdictional issues until
18 class certification. *See Lytle v. Nutramax Laboratories, Inc.*, 2019 WL 8060077, at *6 (C.D. Cal. Dec. 6, 2019) (Bernal, J.) (rejecting argument at the pleadings stage that plaintiffs
19 "cannot represent a national class—first because they lack standing to do so and second because the Court lacks personal jurisdiction over the claims of non-California putative class
20 members" on grounds that class certification is the appropriate time to address these issues); *Sotomayor v. Bank of Am., N.A.*, 377 F. Supp. 3d 1034, 1038 (C.D. Cal. 2019) (determination
21 of personal jurisdiction over claims of putative class members not required at the pleading stage); *Gadomski v. Equifax Information Services, LLC*, 2020 WL 3841041 at *3 (E.D. Cal.
22 Jul. 8, 2020) (denying motion to strike class allegations on grounds that developments in case law regarding application of *BMS* "warrant updated briefing at the class certification stage").

23 [8] With respect to the UCL claim, if any of Plaintiffs' consumer protection claims proceed,
24 there is a predicate violation for "unlawful" prong of the UCL. *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 852 (N.D. Cal. 2018) (holding that violation of CLRA and FAL
25 may serve as predicate violations for a claim under the UCL's "unlawful" prong). With respect to the UCL's "unfair" prong, Plaintiffs easily satisfy the balancing test by
26 alleging, *inter alia*, that Defendants' conduct is of no benefit to consumers. FAC ¶ 79; *see also Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).
27 Plaintiffs' allegations also satisfy the tethering test (*see, e.g.*, *Kanfer v. Pharmacare US, Inc.*, 142 F. Supp. 3d 1091, 1105-06 (S.D. Cal. 2015), while the FTC test is inappropriate
28 in litigation involving anti-consumer conduct. *Lozano v. AT&T Wireless Servs, Inc*, 504 F.3d 718, 736 (9th Cir. 2007).

1   reasonable consumer standard, Plaintiffs must only show that consumers are likely to be

2   deceived by a representation. *See Williams*, 552 F.3d at 938. A reasonable consumer is

3   "neither the most vigilant and suspicious of advertising claims nor the most unwary and

4   unsophisticated but instead is the ordinary consumer within the target population." *Ehret v.*

5   *Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1137 (N.D. Cal. 2014).

6          Whether a representation is likely to deceive is almost always a question of fact, not

7   appropriate for resolution on a motion to dismiss. *Williams*, 552 F.3d at 938-39; *Quinn v.*

8   *Walgreen Co.*, 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013). As such, dismissal of false

9   advertising claims is proper only in a "***rare situation***," where "it [is] ***impossible*** for the

10  plaintiff to prove that a reasonable consumer was likely to be deceived." *Williams*, 552 F.3d

11  at 939 (emphasis added); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512,

12  at *16 (E.D.N.Y. Aug. 29, 2013) (to grant a motion to dismiss, label must meet the "heavy

13  burden of 'extinguish[ing] the possibility' that a reasonable consumer could be misled")

14  (citation omitted); *McCrary v. Elations Co., LLC*, 2013 WL 6402217, at *6 (C.D. Cal.

15  Apr. 24, 2013) (Bernal, J.) (denying motion to dismiss on grounds that defendant's

16  "advertising claim [did] not make it impossible for the plaintiff to prove that a reasonable

17  consumer was likely to be deceived") (internal quotation omitted).

18         Here, as in explained in more detail below, the Serving Representation is a clear-cut

19  statement that the Products will make a specific number of cups of coffee. This is not one of

20  the "rare situation[s]" where dismissal on the pleadings is appropriate, nor is deception

21  "impossible" here. *Williams*, 552 F.3d at 939. Thus, as this Court has previously recognized,

22  it is not appropriate to "delve into the issues of fact going to the heart of the dispute on a

23  motion to dismiss…" *Evans v. DSW, Inc.*, 2017 WL 7058233, at *7–8 (C.D. Cal. Feb. 2,

24  2017) (Bernal, J.).

25         **2.      The "Up To" Statement Does Not Ameliorate Consumer Deception**

26         A consumer who reads the phrase "make up to 240 cups" reasonably believes (as

27  Plaintiffs did) that the Product will make 240 cups if the directions are followed. FAC ¶¶ 9-

28

11, 36. Conversely, a consumer reading the same phrase would not reasonably think that the Product will make only 173 cups, or 72% of the "up to" servings represented. *Id.* ¶¶ 29-31.

Defendants do not dispute that the Products' front packaging prominently represents that they make "up to" a certain number of "6 fl oz servings." Rather, they argue that the Serving Representation is technically true because the "up to" statement transmogrifies a demonstrably false statement it into a truthful one MTD at 16.[9] But Defendants' argument ignores common sense. Taking the argument to its logical conclusion proves the point: even just one tablespoon of ground coffee could technically make "up to" 240 servings, but it would be so diluted that it would cease to be a drinkable cup of coffee. Moreover, the underlying premise of Defendants' argument is legally without merit, as California laws "prohibit 'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Kasky*, 27 Cal. 4th at 951; *Williams*, 552 F.3d at 938 (same, adopting *Kasky*).

Consequently, a substantial body of law prohibits the type of "up to" representations made here. For example, in *Arthur v. United Indus. Corp.*, 2018 WL 1472500, at *6-7 (C.D. Cal. Mar. 23, 2018), the court rejected the defendant's argument that because the weed killer product contained enough concentrate to make the "up to" number of gallons under the lowest of three mixing level instructions, that its "up to" representation could not be deceptive. Instead, the court held that it could not "conclude as a matter of law that a reasonable consumer would not be misled by the Concentrate label's 'makes up to' language, notwithstanding the presence of one set of instructions which, if followed, could actually meet the "up to" representation. *Id.* Under *Arthur's* reasoning, the Court should not decide on

---

[9] Defendants also challenge the sufficiency of the allegation that a tablespoon of ground coffee weighs 5 grams, yet never dispute this fact. MTD at 3. While Plaintiffs look forward to proving the truth of this allegation, at this stage, the Court must accept it as true. *Twombly*, 550 U.S. at 556 (Rule 12(b)(6) does not countenance "dismissals based on a judge's disbelief of a complaint's factual allegations."); *Lytle*, 2019 WL 8060077, at *6 (on a motion to dismiss, "it is appropriate for the Court to 'believe' Plaintiffs' allegations unless judicially noticeable evidence proves those allegations to be misrepresentations or the reasonable inferences to be unreasonable.").

the pleadings how a reasonable consumer could interpret the "up to" statement. *Id.* at *7 ("whether defendant's Concentrate labels are misleading or deceptive is a finding of fact ….."). But even delving into those factual waters, the facts here are far stronger for Plaintiffs than those in *Arthur*, because as discussed *infra* at section III.C.3, the Products provide **no** instructions under which the Serving Representation can be attained.

"Up to" statements have also been held actionable in many other contexts. *See, e.g., Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1172–73 (E.D. Cal. 2013) (finding "up to" battery life statement actionable because product was not accompanied by any disclosures and plaintiff alleged all laptops had battery life substantially less than that represented); *Walter v. Hughes Comm'cns, Inc.*, 682 F. Supp. 2d 1031, 1043 (N.D. Cal. 2010) (denying motion to dismiss based on allegations that plaintiff "was unable to experience the speeds that [defendant] had advertised its service as reaching 'up to,' even during non-peak hours"); *Frenzel v. Aliphcom*, 2015 WL 4110811, at *11 (N.D. Cal. July 7, 2015) (finding "up to" 10 days battery life statement actionable where plaintiff alleged actual battery life was only "a few hours or a day"); *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 537 (C.D. Cal. 2011) (certifying Rule 23 class action under the UCL and CLRA where "the central predominating question is whether Defendants' marketing statements about 'up to 6X BETTER ABSORPTION' or 'effectiveness' [are] materially misleading"); *Thompson Med. Co., Inc. v. Ciba–Geigy Corp.*, 643 F. Supp. 1190, 1200 (S.D.N.Y. 1986) (enjoining defendant from representing that "thousands of consumers have reported to us that they lost up to 5 lbs. the first week" since, although this "may be literally true," it leads "consumers [to] believe they will lose 5 lbs. or more" making the claim "unquestionably false and misleading"); *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1362 (2003) (reversing grant of summary judgment for defendants since "we cannot say that there is no triable issue on whether [defendants' 'up to' representation is] untrue or misleading").

Persuasive FTC authority also recognizes the likelihood of "up to" statements to deceive consumers. For example, in *FTC v. Febre*, 1996 WL 396117, at *2 (N.D. Ill. July 3, 1996), the FTC brought a claim under section 5(a) of the FTCA based on allegations that the

defendants made unsubstantiated claims that their work-at-home programs would earn consumers specific sums of money. The defendants similarly argued that "the language used was conditional (e.g., one "*could* earn *up to*" or it was "*possible*" to make the indicated amount)" and thus there was no guarantee that consumers would earn the stated level of earnings. *Id.* (emphasis added). The court squarely rejected this defense, holding that consumers reasonably believe "the statements of earnings potential represent typical or average earnings." *Id.* (citing cases); *see also U.S. v. Zaken Corp.*, 57 F. Supp. 3d 1233, 1239 (2014) (same). Finally, in June 2012, the FTC released a study it commissioned "indicating that when marketers use the phrase 'up to' in claims about their products, many consumers are likely to believe that they will achieve the maximum 'up to' results." According to the FTC, the study "reinforce[d] the FTC's view that advertisers using ["up to"] claims should be able to substantiate that consumers are likely to achieve the maximum results promised under normal circumstances."[10]

### 3.   Defendants' Bulk-Brewing Argument is Inconsistent with the Reasonable Consumer Standard and It Fails on Its Own Terms

Neither party disputes that reasonable consumers will follow the brewing instructions on the Products' packaging when making coffee, or that the back-panel instructions recommend how much ground coffee to use in two circumstances: 1 tablespoon of ground coffee to make 1 six fluid-ounce-serving or 1/2 measuring cup to make 10 servings (hereinafter, respectively, the "1:1 ratio" and "8:10 ratio" or "bulk-brewing instruction"). No other brewing instructions appear on the Products. Dkt. 36-1, Suber Decl. ¶ 3, Ex. 1.[11]

---

[10]   *See* https://www.ftc.gov/news-events/press-releases/2012/06/ftc-report-many-consumers-believe-claims-promise-maximum-results (last accessed Sept. 14, 2020). The Court can take judicial notice the FTC's press release article. *See Arthur*, 2018 WL 2276636, at *4 (taking judicial notice of the same FTC press release article); *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F.Supp.3d 1011, 1033 (C.D. Cal. 2015) ("Under Rule 201, the court can take judicial notice of public records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies.").

[11]   To be clear, Plaintiffs dispute the text in the red boxes that Defendants added, which is their commentary, not what is printed on the label.

The 1:1 ratio is based on a commonsense reading of the brewing instructions. Defendants counter that the 1:1 ratio is unreasonable because the instructions "tell consumers that the suggested strength of servings can also be accomplished with 10 servings of 6 fluid ounces and ½ measuring cup (8 tablespoons) of coffee."[12] According to Defendants, "[t]his clarifies that *the more water is used, the fewer tablespoons of coffee are needed*." MTD at 3 (emphasis in original). This argument fails for at least three independent reasons.

First, there are two different interpretations of how a reasonable consumer interprets the brewing instructions. Defendants admit as much when they argue that the FAC "asks this Court to ignore obvious alternative explanations." MTD at 14. At best, Defendants' contrary interpretation is a competing theory that they can advance later in the case. On a motion to dismiss, however, the Court should accept Plaintiffs' theory as the correct one. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (when "there are two alternative explanations . . . plaintiff's complaint survives a motion to dismiss . . . [unless] defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible."); *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2nd Cir. 2012) ("The choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion…[the court] may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible.").

More specific to the issue here, the *Arthur* court explained that reasonable consumers are likely to be deceived when presented with two possible mixing instructions because they would be forced to guess which option to follow:

> Although these instructions are not hidden or abnormally small, they fail to explicitly state which option produces the "makes up to" advertisement on the front label of the Concentrate bottle. Consequently, it appears that the three mixing options could result in confusion, as consumers would need to either calculate the ready-to-use quantities of all mixing options or guess which mixing option creates the "makes up to" amount provided on the front label.

2018 WL 1472500, at *7. Similarly, in *Lytle*, confronting a situation where the parties disputed the meaning of two studies on which the plaintiffs' claims relied, this Court held, "[t]o overcome the evidentiary presumptions the Court must make in favor of Plaintiffs, Defendants must do more than suggest another reasonable—or even a better—interpretation of the studies. They must demonstrate that the interpretation advanced in the SAC is inaccurate or unreasonable." 2019 WL 8060077, at *4.

Part and parcel with the above, the parties' differing viewpoints hinge on a factual inquiry not appropriate for resolution on a motion to dismiss. *See Williams*, 552 F.3d at 938; s*ee also Martin v. Monsanto Co.*, 2017 WL 659014 (C.D. Cal. Feb. 16, 2017) (denying motion to dismiss despite presence of Roundup's most-diluted instruction which would yield the represented "up to" number of gallons, and holding that whether the labels are likely to deceive a reasonable consumer is more appropriately resolved on a motion for summary judgment or motion for class certification); *Rawa v. Monsanto Co.*, 2017 WL 3392090 (E.D. Mo. Aug. 7, 2017) (same). Indeed, whether reasonable consumers follow the 1:1 ratio or the 8:10 ratio, to the extent appropriate, can and should be fleshed out through discovery. *See*, *e.g.*, *Lytle*, 2019 WL 8060077, at *4 ("Defendants raise arguments regarding the reliability, methodology, and appropriate extrapolation of the study—but these are not the type of questions the Court resolves at the pleading stage."). Underlying factual issues here could also become relevant. For example, Defendants' own website, entitled "How to Measure Coffee Cups Calculator" directly contradicts their position.[12] The website confirms that 1 serving uniformly requires 1 tablespoon of ground coffee for "household coffee makers" and "[n]ot for use with foodservice machines."[13] It also provides an interactive "calculator" which instructs how much ground coffee to use. No matter how many cups are inputted, the output

---

[12] The Court can take judicial notice of Defendants' website. *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015) ("the case law applying Rule 201 states that, '[f]or purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination'") (citation omitted).

[13] https://www.folgerscoffee.com/coffee-how-to/how-to-measure-coffee (last visited September 14, 2020).

always equals 1 tablespoon of coffee grounds per serving—e.g., if 10 cups are inputted, users are instructed to use 10 tablespoons of ground coffee.

Second, as a matter of common sense, consumers use a tablespoon—and certainly not a measuring cup—to scoop ground coffee into their coffeemaker. By asking the Court to take judicial notice of the fact that ½ measuring cup = 8 tablespoons, MTD at 3, n. 2., Defendants concede that a tablespoon is the default measurement metric. As a result, consumers will use 1 tablespoon of ground coffee per desired serving (the 1:1 ratio). Moreover, in both the Serving Representation and the 1:1 ratio instruction, Defendants state that one serving is 6 fl oz, a consistency that reinforces the belief that following the 1:1 ratio will yield the Serving Representation. Finally, a consumer following Defendants' nebulous reasoning that "more water requires less coffee" would be required to make assumptions and perform complex calculations just to brew a pot of coffee. By way of example, assume a consumer wants to brew 6 cups of coffee. Following the 1:1 ratio, she only needs to dole out 6 tablespoons of ground coffee. Following the 8:10 ratio, however, a consumer must first assume the proportional reduction of ground coffee to water applies equally to 6 cups. Then, the consumer would need to perform an algebraic equation to apply the 8:10 ratio to 6 cups of coffee. That kind of mental math is not how a reasonable consumer makes coffee.

Third, even if the Court were to accept Defendants' bulk-brewing instruction, dismissal would be unwarranted because the Serving Representation would ***still be false***. In other words, when applying the 8:10 ratio across the board (*i.e.*, for every single brew until the canister is used up), none of the Products can make close to the Serving Representation. For example, the 24.2 oz. French Roast canister states it can make up to 210 cups. 210/10 = 21 bulk brews. If 8 tablespoons are used per brew (as the ratio requires), that equals 168 tablespoons [21 brews x 8 tablespoons]. Because 1 tablespoon equals 5 grams of coffee, 840 grams are required to make 210 cups of coffee [168 x 5]. But the 24.2 oz. container has a net weight of 686 grams. Thus, under the 8:10 ratio, the 24.2 oz. canister only contains 81.6% of the Serving Representation [686/840 = 81.6%], or 171.5 servings, which is 38.5 servings fewer than what is represented. This same shortage applies to all the Products, which, on

average, contain only 85.44% of the Serving Representation under the 8:10 ratio. This is a material shortfall; it means that consumers on average overpaid for the Products by 14.56% even under the most generous standard advanced by Defendants.

### 4.    Plaintiffs Satisfy Rule 9(b)

The FAC also satisfies Rule 9(b)'s "who, what, when, where, and how" requirements which apply to all claims sounding in fraud. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Allegations only need to be "'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Id.* Defendants only challenge the "how" prong, asserting that "[b]eyond their mathematical equation, Plaintiffs do not provide further factual allegations to explain how they reach their flawed conclusion." MTD at 16. But as explained above, Defendants are well-apprised of the basis for Plaintiffs' claims, as Plaintiffs clearly allege the Serving Representation made on each Product (FAC ¶¶ 20-22), the calculations revealing the Products are incapable of making the Serving Representation (*Id.* ¶¶ 23-32), the amount of ground coffee contained in each Product (*Id.* ¶ 33), and that reasonable consumers are likely to be misled and harmed by the Serving Representation (*Id.*  ¶¶ 41-43). These allegations clearly satisfy the "how" prong under Rule 9(b). *See*, *e.g.*, *Strumlauf*, 192 F. Supp. 3d at 1035 ("how" prong satisfied when "[t]he Complaint alleges that Starbuck's conduct was false and misleading because 'Starbucks Lattes are underfilled…' and that 'Plaintiffs were induced to pay substantially more for Starbucks Lattes based on these false representations.'")

### D.    Plaintiffs Adequately Plead Breach of Warranty Claims

### 1.    Breach of Express Warranty

Plaintiffs allege that Defendants breached express warranties under California and New York law. Under California law, a plaintiff must prove that "(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Weinstat v. Dentsply Internat., Inc.*, 180 Cal. App. 4th 1213, 1227 (2010). Under New York law, "[a] successful

breach of express warranty claim requires proof that such an affirmation or promise existed, that it was breached, and that plaintiff detrimentally relied on the warranty." *Tears v. Boston Scientific Corp.*, 344 F. Supp. 3d 500, 512 (S.D.N.Y. 2018).

Plaintiffs sufficiently allege breach of express warranty: (1) the Serving Representation on each Product is an affirmation of fact or promise that the Product can indeed make that many promised 6 oz cups; (2) Plaintiffs relied on the representations in purchasing the Products, which were part of the basis of their bargains; and (3) Defendants breached these warranties by selling the Products with substantially less ground coffee than required to make the promised number of servings. FAC ¶¶ 9-11, 21, 33, 106. *Cf. Martin*, 2017 WL 659014, at *1, 5 (denying motion to dismiss breach of express warranty claim where plaintiff alleged that, when users follow the back-panel instructions, Roundup Concentrates only made about half of the amount represented on the front label). Thus, Plaintiffs' express warranty claims are adequately pleaded. In any event, as with Plaintiffs' statutory false advertising claims, whether a challenged misrepresentation constitutes an affirmation of fact, and therefore an express warranty, is normally a question of fact for the jury. *See McDonnell Douglas Corp. v. Thiokol Corp.*, 124 F.3d 1173, 1176 (9th Cir. 1997) ("[W]ether seller affirmed a fact amounting to an express warranty is a question of fact"); *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 567 (S.D.N.Y. 2016) (holding that whether the term "all natural" is an express warranty is a matter of fact not appropriate for a motion to dismiss).

### 2.      Breach of Implied Warranty

Defendants contend that Plaintiffs' implied warranty claims fail because they rise and fall with Plaintiffs' express warranty claims. MTD at 20. Because Plaintiffs' express warranty claims survive for the reasons stated above, so too do their implied warranty claims.

Defendants also argue that the implied warranty claims fail because Plaintiffs are not in vertical privity with Defendants. But under California law, Plaintiffs are not required to be in vertical privity with Defendants because, as purchasers of the Products from third-party retailers, they are intended third-party beneficiaries of the contracts between Defendants and the retailers. This Court recognized the third-party beneficiary exception in *Mack v. LLR,*

*Inc.*, 2018 WL 6927860 (C.D. Cal. Aug. 15, 2018) (Bernal, J.), where it rejected the defendants' lack of vertical privity argument, "join[ing] the courts in this circuit that have recognized a third-party beneficiary exception." *Id.* at *13; *see also Michael*, 2016 WL 8902574, at 26-27 (a plaintiff-consumer does not need to show vertical privity for an implied warranty claim when purchasing the product from a retailer because he is an intended beneficiary of the warranties); *Roberts v. Electrolux Home Prod., Inc.*, 2013 WL 7753579, at *10 (C.D. Cal. Mar. 4, 2013) (same). New York courts have similarly applied the third-party beneficiary exception to claims for breach of implied warranty. *See, e.g., Praxair, Inc. v. General Insulation Co.*, 611 F. Supp. 2d 318, 330 (W.D.N.Y. 2009) (third-party beneficiary to a contract may assert a claim for breach of implied warranty under New York law); *Delgado v. Kornegay*, 395 N.Y.S.2d 126, 126–27 (Dist. Ct. 1977) (home purchaser entitled to damages for breach of implied warranty as third-party beneficiary).

California and New York courts recognize an additional exception to the privity requirement in cases involving foodstuff. *Cabrera*, 2019 WL 1146828, at 11 ("Privity is not required when the claim relates to food or other substances intended for consumption by consumers."); *Ciampichini v. Ring Bros.*, 40 A.D. 2d 289, 292, 339 N.Y.S. 2d 716 (1973) ("The pattern in New York has been to eliminate the privity requirement (1) with respect to food and beverages") (citation omitted). Here, the Products are foodstuffs meant for human consumption and therefore exempt from the privity requirement.

**E.   Plaintiffs Adequately Plead an MMWA Claim**

Defendants assert Plaintiffs' MMWA claim falls with their implied warranty claims. As discussed above, the implied warranty claims are adequately pleaded, so this is not a basis to dismiss the MMWA claim. Defendants also contend that the MMWA claim is procedurally defective because the number of named plaintiffs in this case is less than one hundred. MTD at 21. However, where a plaintiff properly invokes an alternative basis for jurisdiction, such as under the Class Action Fairness Act ("CAFA"), courts have permitted MMWA claims to proceed. *See, e.g., Morgan v. Apple Inc.*, 2018 WL 2234537, at *8 (N.D. Cal. May 16, 2018) (permitting MMWA claim with less than 100 named plaintiffs to proceed

under CAFA); *Carpenter v. PetSmart, Inc.*, 441 F. Supp. 3d 1028, 1039 fn. 3 (S.D. Cal. 2020) (same); *Keegan v. Am. Honda Motor Co., Inc.*, 838 F. Supp. 2d 929, 954 (C.D. Cal. 2012) (same). Courts have reasoned that while the MMWA states that federal jurisdiction may be premised on allegations meeting the requirements of 15 U.S.C. § 2310(d)(3), the MMWA "alternatively permits jurisdiction 'in any court of competent jurisdiction in any State or the District of Columbia.'" *Bros. v. Hewlett-Packard Co.*, 2007 WL 485979, at *8 (N.D. Cal. Feb. 12, 2007) (citing § 2310(d)(1)(A)). "In other words, if a federal court otherwise has jurisdiction over the action, no additional jurisdictional showing is required for the Magnuson-Moss claim" *Id.* Here, while the number of named plaintiffs is less than one hundred, Plaintiffs have alleged that jurisdiction is proper under CAFA, FAC ¶ 6, which Defendants do not challenge. Thus, Plaintiffs sufficiently allege an MMWA claim.

**F.    Plaintiffs Adequately Plead Common Law Claims**

**1.    Intentional and Negligent Misrepresentation Claims**

Defendants advance multiple unavailing arguments against Plaintiffs' claims for intentional and negligent misrepresentation. First, Defendants argue that these claims fail because there was no misrepresentation. MTD at 22. However, as discussed in sections III.C.2-3, *supra*, the Serving Representation is false and misleading. Defendants next contend that Plaintiffs fail to allege that Defendants either acted with the requisite fraudulent intent to deceive or lacked reasonable grounds to believe the representations were true. MTD at 22. However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *Luong v. Subaru of Am., Inc.*, 2018 WL 2047646, at *5 (N.D. Cal. May 2, 2018). This is because a plaintiff cannot be expected to plead a defendant's actual state of mind. *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995). Here, Plaintiffs allege that, as the entities responsible for the development, manufacturing, and labeling of the Products, Defendants were undoubtedly aware that the Products contain a shortfall of ground coffee, and that consumers could reasonably believe that the Serving Representation means the Products will make the specific number of servings. FAC ¶¶ 122, 130. Such allegations, without the benefit of discovery, are sufficient to show the requisite

fraudulent intent. *Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796, at \*12 (N.D. Cal. May 26, 2011) (sustaining fraud claim based on allegation that "defendants 'knew or recklessly disregarded' the fact that their ice cream was not 'all natural'".)

Defendants also argue that Plaintiffs have not and cannot plead that any reasonable consumer justifiably relied on the Serving Representation to conclude that the Products contains 240 tablespoons of ground coffee. MTD at 22. As an initial matter, Defendants misrepresent Plaintiffs' claims. Plaintiffs allege that consumers reasonably believe that if they follow Defendants' serving instructions, the Product would make up to 240 servings (as represented on the 30.5 oz. canister). FAC ¶ 36. Plaintiffs allege that on the back of all Products, Defendants instruct consumers to use 1 tablespoon of ground coffee to make 1 serving of coffee. *Id.* ¶ 23. Thus, consumers reasonably expect the 30.5 oz. canister to have 240 tablespoons of ground coffee if consumers are to make 240 servings based on Defendants' instructions. *Id.* ¶¶ 27-31. But the Product only contains 173 tablespoons of ground coffee, far less than the 240 tablespoons needed to make 240 servings. *Id.*

In any event, the issue of whether Plaintiffs justifiably relied on the Serving Representation is premature. *Sherwin-Williams Co. v. JB Collision Servs., Inc.*, 2015 WL 3999030, at \*7 (S.D. Cal. June 30, 2015) ("Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a [claimant's] reliance is reasonable is a question of fact … for trial.") (citation omitted); *Singleton v. Fifth Generation, Inc.*, 2016 WL 406295 at \*14 n.24 (N.D.N.Y. Jan. 12, 2016) (whether a plaintiff's reliance was reasonable cannot be decided on motion to dismiss). At this stage, Plaintiffs' allegations detailing the drastic discrepancy in the amount of ground coffee, and that Plaintiffs saw and relied on the misrepresentations are sufficient. FAC ¶¶ 124, 132.

Finally, Defendants argue that Plaintiffs' negligent misrepresentation claims are barred by the economic loss doctrine because they are based solely on alleged economic injury. MTD at 23. The economic loss doctrine does not apply to claims for negligent misrepresentation because "California law classifies negligent misrepresentation as a species of fraud . . . for which economic loss is recoverable." *Zakaria v. Gerber Prod. Co.*, 2015 WL

-25-

3827654, at 11 (C.D. Cal. June 18, 2015) (citations omitted); *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 991 (2004); *Rhodeman v. Ocwen Loan Servicing, LLC*, 2019 WL 5955368, at *13 (C.D. Cal. Nov. 12, 2019) (Bernal, J.) (adopting *Robinson Helicopter* and holding that economic loss doctrine does not bar fraud claim based in tort). Thus, Plaintiffs' negligent misrepresentation claim is not barred by the economic loss doctrine.

### 2. Quasi-Contract/Unjust Enrichment Claim

Defendants assert that Plaintiffs' quasi contract/unjust enrichment claim fails because there is no plausible claim that Defendants "enticed [plaintiffs] to purchase products through misleading labels." MTD at 24. But as explained in III.C, *supra*, Plaintiffs have sufficiently alleged that the Product labels are misleading. Plaintiffs also allege purchasing the Products, conferral of benefit on Defendants, and the reasonable expectation of receiving promised benefits, which went unfulfilled and left Plaintiffs and Class members without the full value of the benefit conferred on Defendants, resulting in unjust enrichment. FAC ¶¶ 136-139.

Defendants also argue that Plaintiffs cannot state a claim for quasi-contract while asserting a separate claim for breach of express warranty. MTD at 24. However, Rule 8(d) expressly allows pleading these claims in the alternative. *See*, *e.g.*, *Becerra v. Gen. Motors LLC*, 241 F. Supp. 3d 1094, 1117 (S.D. Cal. 2017) ("8(d) allows parties to plead claims in the alternative or in an inconsistent manner, and courts in this Circuit have allowed unjust enrichment and breach of contract claims to proceed simultaneously in one action."); *Longest v. Green Tree Servicing LLC*, 74 F. Supp. 3d 1289, 1302 (C.D. Cal. 2015) (collecting cases permitting "unjust enrichment and breach of contract claims to proceed simultaneously.").

Finally, Defendants argue the claim is superfluous to the consumer fraud claims and seeks the same remedy. MTD at 24. But the Ninth Circuit has explicitly rejected this argument. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762-63 (9th Cir. 2015) (under Rule 8(a)(3), duplicative and superfluous claims are "not grounds for dismissal."); *see also Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 989 (N.D. Cal. 2016) (rejecting duplicative argument as "no longer viable at the motion to dismiss stage in this Circuit" following *Astiana*).

**G.     Plaintiffs' Claim for Equitable Relief Should Not be Dismissed**

Defendants contend that Plaintiffs' requests for equitable relief fail because they have an adequate remedy available at law. MTD at 25. As an initial matter, this is not a valid basis for dismissal, as Plaintiffs have the right to plead claims in the alternative, and the availability of monetary damages does not preclude a claim for equitable relief. *See Luong*, 2018 WL 2047646, at *7 ("The availability of monetary damages does not preclude a claim for equitable relief under the UCL and CLRA based upon the same conduct."); *Estakhrian v. Obenstine*, 233 F. Supp. 3d 824, 846 (C.D. Cal. 2017) ("plaintiffs may seek injunctive and/or restitutionary equitable relief separate and apart from the same underlying claims").

Regardless, a legal remedy alone is inadequate for Plaintiffs to obtain full relief as Plaintiffs and consumers will suffer irreparable injury in the absence of equitable relief. *See Grace v. Apple Inc.*, 2017 WL 3232464, at *16 (N.D. Cal. July 28, 2017). Plaintiffs seek an injunction prohibiting Defendants from continuing to misrepresent the number of servings each Product can make. Such a remedy is particularly appropriate here, where Plaintiffs and consumers are harmed by the fact that in the future, they will not know whether Defendants' representations, which they continue to make, are truthful and non-misleading. *See* FAC ¶ 13. Defendants rely on this Court's holding in *Lytle*, 2019 WL 8060070, at *6. MTD at 25. But in that case, this Court specifically ***allowed*** plaintiffs to pursue both legal and equitable remedies, if plaintiffs could allege that their legal remedy alone was inadequate. *Id.* at 6, n. 5 ("The Court's holding regarding restitution should not be read to limit Plaintiffs' ability to seek an injunction. Should Plaintiffs be able to cure the defects described in § IV.A.3.a, Plaintiffs may be entitled to seek injunctive equitable relief."); *see also Evans v. DSW, Inc.*, 2017 WL 7058232, at *6 (C.D. Cal. Sept. 14, 2017) (Bernal, J.) (plaintiff's allegations seeking to cease defendant's continuing deceptive conduct are "sufficient to allege that a damages remedy is inadequate.").

Defendants' other authority is similarly flawed. Defendants argue that under *Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1203 (N.D. Cal. 2017), courts in this Circuit routinely hold that when a plaintiff has sought (or could seek) monetary damages for breach of

1    contract, breach of warranty, or violation of the CLRA based on the same factual predicates,
2    the plaintiff has an adequate remedy at law and may not seek equitable remedies. MTD at 25.
3    In *Evans*, however, defendants relied on *Munning* for the same proposition, but this Court
4    found *Munning* "distinguishable because the court in that case had already dismissed the
5    plaintiff's [equitable] UCL and FAL claims." *Id.* at *6. Here, Plaintiffs' UCL and FAL claims
6    are viable, rendering *Munning* inapposite.

7    **H.    Plaintiffs' Request for Punitive Damages Should Not be Dismissed**

8    At the outset, Defendants' motion to "dismiss" Plaintiffs' request for punitive damages
9    is actually an improper motion to strike. *See Coffelt*, 2017 WL 10543343, at *5 ("Rule 12(f)
10   does not authorize district courts to strike claims for damages on the ground that such claims
11   are precluded as a matter of law.").   Plaintiffs' prayer for punitive damages cannot be
12   reasonably considered an "insufficient defense," "redundant," "immaterial," or "scandalous."
13   *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*,
14   510 U.S. 517 (1994) ("'Immaterial' matter is that which has no essential or important
15   relationship to the **claim** for relief or the **defenses** being pleaded.") (emphasis added).
16   Defendants argue Plaintiffs' request for punitive damages fails because they fail to allege that
17   any officer, director, or managing agent of Defendants acted with fraud, oppression, or
18   malice. MTD at 26. But this is not required under federal pleading standards. *See* Fed. R. Civ.
19   P. 9; *Shapiro v. AT&T Mobility, LLC*, 2020 WL 4341778, at *6 (C.D. Cal. May 18, 2020)
20   ("'[I]n federal court, a plaintiff may include a 'short and plain' prayer for punitive damages
21   that relies entirely on unsupported and conclusory averments of malice or fraudulent
22   intent'"); *Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 273 (N.D. Cal. 2015) ("Although Section
23   3294 provides the governing substantive law for punitive damages, California's heightened
24   pleading standard irreconcilably conflicts with Rules 8 and 9 of the [FRCP]—the provisions
25   governing the adequacy of pleadings in federal court."); *Jager v. Davol Inc.*, 2016 WL
26   6157942, at *7 (C.D. Cal. Oct. 20, 2016) (Bernal, J.) (rejecting argument that demand for
27   punitive damages failed by neglecting to identify higher-level employees: "based on the facts

28

1  alleged in the Complaint, it is unreasonable to assume that the alleged conduct of which
2  Plaintiffs complain … is attributable to anyone without directorial responsibility.").

3  **I.      Defendants' Request to "Dismiss" Class Allegations is Improper**

4          Finally, Defendants seek dismissal of Plaintiffs' nationwide class allegations, arguing
5  that under *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 593 (9th Cir. 2012), variations
6  in state law preclude applying California law to the nationwide claims. MTD at 27. However,
7  Defendants fail to meet their burden of demonstrating any material conflicts. And because
8  that determination should not be made until class certification, the request is premature.

9          First, Defendants' request to dismiss Plaintiffs nationwide claims should be deferred
10 until class certification, after a factual record has been developed. Indeed, in *Mazza*, the court
11 undertook a choice-of-law analysis at class certification, not the pleading stage. 666 F.3d at
12 585. *See also Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1159 (C.D. Cal. 2012)
13 ("Until the Parties have explored the facts in this case, it would be premature to speculate
14 about whether the differences in various states' consumer protection laws are material in this
15 case."); *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 572 (N.D. Cal. 2013) (same).[14]

16         Second, even if the Court were to perform a choice-of-law analysis now, Defendants
17 have not met their burden under the California governmental interest test. *Bruno*, 280 F.R.D.
18 at 531 ("Defendant has the burden of showing that there is an actual conflict between
19 California and other law[,]" including "to convince this Court of 'material' differences in the
20 law, as shown 'on the facts of this case.'") (citations omitted). As recognized in *Mazza*, "[t]he
21 fact that two or more states are involved does not itself indicate that there is a conflict of law
22 problem. A problem only arises if differences in state law are material, that is, if they make a
23 difference in this litigation." 666 F.3d at 590. To meet its burden, Defendants must engage in

24

25

---

26 [14] This Court has denied requests to dismiss or strike nationwide allegations in at least three
   other cases. *See Lytle*, 2019 WL 8060070, at *7; *Mack*, 2018 WL 6927860, at 5; *Dean v.*
27 *Colgate-Palmolive Co.*, 2015 WL 3999313, at *11–12 (C.D. Cal. June 17, 2015) (Bernal, J.)
   ("In responding to similar motions to strike, courts have repeated that, 'Rule 23 is the better
28 vehicle to test the propriety of class certification.'") (citation omitted).

an "analytically rigorous discussion . . . based on the facts and circumstances of *this* case, and *this* Plaintiff's allegations." *Forcellati*, 876 F. Supp. 2d at 1161 (emphasis original).

Defendants argue there are conflicts between the laws of each state and attach a summary chart outlining the purported conflicts. MTD at 28. However, nowhere do Defendants discuss the facts of this case or event attempt to explain how, under the laws of each state, these facts lead to material differences in outcome. Such conclusory assertions that conflicts exist do not suffice. Indeed, courts have rejected attempts to dismiss nationwide allegations by simply attaching summary charts or referring to other courts' choice of law analyses. *See*, *e.g.*, *In re POM Wonderful LLC Mktg. & Sales Pratices Litig.*, 2012 WL 4490860, at *3–4 (C.D. Cal. Sept. 28, 2012) ("The chart summarizes each law's provisions regarding such elements as scienter, reliance, and timeliness, as well as remedies and defenses . . . [N]owhere does [defendant] apply the facts of this case to those laws or attempt to demonstrate, beyond citation to *Mazza*, that a true conflict exists."). It is not enough for Defendants to assert that each foreign state has an overriding interest in applying its own laws. MTD at 27. *Forcellati*, 2014 WL 1410264, at *3 ("a citation to *Mazza* and the broad statement that 'each of the 50 states has an interest in … protecting its consumers and setting limits on when businesses may be sued … is not enough"). Thus, Plaintiffs' nationwide claims should not be dismissed.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that Court deny Defendants' Motion to Dismiss in its entirety. Alternatively, if the Court is inclined to grant any part of the Motion, Plaintiffs respectfully request leave to amend pursuant to Rule 15(a).

DATED: September 14, 2020          Respectfully submitted,

**FARUQI AND FARUQI, LLP**

*/s/ Benjamin Heikali*
Benjamin Heikali
Joshua Nassir

**The Wand Law Firm, P.C.**
Aubry Wand

-30-

**Carlson Lynch, LLP**
Todd D. Carpenter
Scott G. Braden

*Attorneys for Plaintiffs and the Putative Classes*

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS; CASE NO. 5:20-CV-00992-JGB-SHK