UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 20-992 JGB (SHKx)** | Date | December 16, 2020 |
|---|---|---|---|
| Title | ***Shelly Ashton, et al. v. The J.M. Smucker Co., et al.*** | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   **Order (1) GRANTING-IN-PART AND DENYING-IN-PART Defendants' Motion to Dismiss (Dkt. No. 36); and (2) VACATING the December 21, 2020 Hearing (IN CHAMBERS)**

Before the Court is a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) filed by Defendants The J.M. Smucker Company and The Folger Coffee Company. ("Motion," Dkt. No. 36.)  The Court determines this matter is appropriate for resolution without a hearing.  See Fed. R. Civ. P. 78; L.R. 7-15.  After considering all papers filed in support of and in opposition to the Motion, the Court GRANTS-IN-PART and DENIES-IN-PART Defendants' Motion.  The December 21, 2020 hearing is VACATED.

## I. BACKGROUND

On May 8, 2020, Plaintiffs Shelly Ashton, Jay Schoener, and Ramon Ibarra, on behalf of themselves and all others similarly situated, filed a class action complaint against Defendants The J.M. Smucker Corporation, The Folger Coffee Company, and Does 1 through 50. ("Complaint," Dkt. No. 1.)  On June 29, 2020, Plaintiffs filed a First Amended Complaint ("FAC") as of right.  ("FAC," Dkt. No. 17.)  The FAC alleges eleven causes of action: (1) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq.; (2) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, et seq.; (3) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq.; (4) violation of N.Y. Gen. Bus. Law § 349; (5) violation of N.Y. Gen. Bus. Law § 350; (6) breach of express warranty; (7) breach of implied warranty; (8) intentional misrepresentation; (9) negligent misrepresentation; (10) quasi contract/unjust

enrichment/restitution; and (11) violation of the Magnusson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, et seq. (See FAC.)

On August 17, 2020, Defendants filed this Motion. Plaintiffs filed their Opposition on September 14, 2020. ("Opposition," Dkt. No. 39.) Defendants replied on October 5, 2020. ("Reply," Dkt. No. 40.)

## II. FACTUAL ALLEGATIONS

Plaintiffs allege the following facts. J.M. Smucker Company and The Folger Coffee Company (collectively, "Defendants") are responsible for the development, manufacturing, packaging, advertising, distribution, and sale of Folgers ground coffee products. (Compl. ¶¶ 14-15; 36.)

Plaintiff Shelly Ashton ("Ashton"), who resides in Riverside, California, purchased the Folgers Classic Roast 30 oz and Folgers Black Silk 24.2 oz products in April 2020. (Id. ¶ 9.) Plaintiff saw and relied on the representation "MAKES UP TO 240 6 FL OZ CUPS" in front of the Classic Roast canister, and the representation "MAKES UP TO 210 6 FL OZ CUPS" prominently printed in front of the Black Silk canister. (Id.) In April 2020, Plaintiff Jay Schoener ("Schoener"), who resides in Chenango County, New York, purchased the Folgers Classic Roast 48 oz product at a store in New York. (Id. ¶ 10.) Schoener saw and relied on the representation "MAKES UP TO 360 6 FL OZ CUPS" prominently printed in front of the canister. In or around December 2019, Plaintiff Ramon Ibarra ("Ibarra"), who resides in San Diego County, California, purchased three of the Folgers French Roast 24.2 oz products at a store in California. (Id. ¶ 11.) Ibarra saw and relied on the representation "MAKES UP TO 210 6 FL OZ CUPS" printed prominently on the front of the canister. (Id.)

Defendants place materially identical representations on the front label of Folgers ground coffee canisters of all varieties and sizes ("Products"), although the number of represented servings varies based on the size of the Product. (Id. ¶¶ 17-18, 22.) On the back of all the products, Defendants instruct consumers that they should use one tablespoon of ground coffee to make one serving/cup of coffee. (Id. ¶ 23.) Based on standard measurements, Plaintiffs allege that Defendants grossly overstate the number of servings the Products can make. (Id. ¶ 25.) For example, Defendants represent that the 30.5 oz canister "MAKES UP TO 240 6 FLZ OZ." (Id. ¶ 26.) However, to make 240 servings, 240 tablespoons (or 1200 grams) of ground coffee are needed. (Id. ¶¶ 27-28.) However, the 30.5 oz canister only has 865 grams of ground coffee, 72% of the amount of ground coffee needed to make up the represented amount of cups. (Id. ¶ 29.) The same calculations apply to all the Products of different net weights. (Id. ¶ 33.) On average, the 39 different varieties of Products at issue contain enough ground coffee to make only 68.25% of the servings promised on the packaging. (Id. ¶¶ 33-34.)

All three Plaintiffs saw and relied on Defendants' representations on the packaging, and believed that the Products contained enough ground coffee to make the represented number of servings. (Id. ¶¶ 9-11.) This was an important factor in their decision to purchase the Products.

(Id.)  Plaintiffs allege they would have paid significantly less for the Products had they known that the Products did not contain enough ground coffee to make the represented number of servings of coffee.  (Id.)

Plaintiffs bring this case on behalf of a nationwide class of persons who purchased any of the Products in the United States within the applicable statute of limitations period, two subclasses of persons who purchased the Products in New York and California, and a California consumer subclass.  (Id. ¶ 44.)

## III. LEGAL STANDARD

### A.  Subject Matter Jurisdiction (Fed. R. Civ. P. 12(b)(1))

A party may seek dismissal of an action for lack of subject matter jurisdiction under Rule 12(b)(1) "either on the face of the pleadings or by presenting evidence."  Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003); see also White v. Lee, 227 F.3d 1217, 1242 (9th Cir. 2000).  Where the party asserts a facial challenge, the court limits its inquiry to the allegations set forth in the complaint.  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).

"In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."  Id.  The court "need not presume the truthfulness of the plaintiff's allegations," Lee, 227 F.3d at 1242, and may generally "resolve factual disputes concerning the existence of jurisdiction."  McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988).  "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa County, 343 F.3d 1036, 1040 (9th Cir. 2003).  "Where jurisdiction is intertwined with the merits," the Court must "[a]ssume the truth of the allegations in a complaint... unless controverted by undisputed facts in the record."  Warren, 328 F.3d 1136, 1139 (9th Cir. 2003).

### B.  Personal Jurisdiction (Fed. R. Civ. P. 12(b)(2))

"The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process."  Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154-55 (9th Cir. 2006) (citing Fireman's Fund Ins. Co. v. Nat. Bank of Coops., 103 F.3d 888, 893 (9th Cir. 1996)).  Because California authorizes jurisdiction to the fullest extent permitted by the Constitution, see Cal. Code Civ. P. § 410.10, the only question the Court must ask in this case is whether the exercise of jurisdiction over Defendants would be consistent with due process.  Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003).

The Fourteenth Amendment's Due Process Clause permits courts to exercise personal jurisdiction over any defendant who has sufficient "minimum contacts" with the forum that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  There are two recognized bases for exercising personal jurisdiction over a non-resident defendant: (1) "general jurisdiction," which arises where defendant's activities in the forum state are sufficiently "substantial" or "continuous and systematic" to justify the exercise of jurisdiction over him in all matters; and (2) "specific jurisdiction," which arises when a defendant's specific contacts with the forum give rise to the claim in question.  See Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414–16 (1984).

Where, as here, a court decides a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss.  Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995); Doe v. Unocal Corp., 27 F. Supp. 2d 1174, 1181 (C.D. Cal. 1998), aff'd, 248 F.3d 915 (9th Cir. 2001).  Plaintiffs' version of the facts is taken as true for purposes of the motion if not directly controverted, and conflicts between the parties' affidavits must be resolved in plaintiff's favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.  AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996); Unocal, 27 F. Supp. 2d at 1181.

## C.  Failure to State a Claim (Fed. R. Civ. P. 12(b)(6))

Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Horosny v. Burlington Coat Factory, Inc., No. 15–05005, 2015 WL 12532178, at *3 (C.D. Cal. Oct. 26, 2015).  When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint — as well as any reasonable inferences to be drawn from them — as true and construe them in the light most favorable to the non-moving party.  See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (citations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662,

678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).  The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

## IV.  DISCUSSION

Defendants seek to dismiss the action under Rule 12(b)(1), arguing that Plaintiffs lack standing to bring the asserted claims.  (Mot. at 4-9.)  Defendants also seek to dismiss the action under Rule 12(b)(2), arguing that the Court lacks personal jurisdiction over Defendants with respect to both Plaintiff Schoener and out-of-state putative class members.  (Id. at 9-11.)  Finally, Defendants argue that the FAC should be dismissed under Rule 12(b)(6) for failure to state a claim.  (Id. at 11-17.)

For the reasons established below, the Court DENIES the Motion as to standing, personal jurisdiction, Claims 1-10, equitable relief, and nationwide class allegations.  However, the Court GRANTS the Motion as to Claim 11 and Plaintiffs' request for punitive damages.

## A.  Standing

Defendants ask the Court to dismiss this action for lack of subject matter jurisdiction, arguing that Plaintiffs lack standing.[1]  (Mot. at 4.)  To satisfy Article III standing, a plaintiff must have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1547 (2016) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)).  The plaintiff bears the burden of establishing these elements, and when "a case is at the pleading stage, the plaintiff must 'clearly ... allege facts demonstrating' each element" to meet that burden.  Id. (quoting Warth v. Seldin, 422 U.S. 490, 518 (1975)).

Plaintiffs must also meet additional statutory standing requirements.  Under the UCL and CLRA, "a private person has standing only if he or she 'has suffered injury in fact and has lost money or property as a result of the unfair competition.'"  Cal. Bus. & Prof. Code § 17204.  To establish standing under the UCL and CLRA, a plaintiff must: "(1) establish a loss or deprivation of money or property sufficient to qualify as an injury in fact, i.e., economic injury, and (2) show that economic injury was the result of, i.e., caused by, the unfair business practice or false

---

[1] Because this is a facial challenge, the Court "limits its inquiry to the allegations set forth in the complaint."  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).

advertising that is the gravamen of the claim." Kwikset Corp. v. Super. Ct., 51 Cal. 4th 310, 322 (2011) (emphasis in original). Under the CLRA, the plaintiff "must not only be exposed to an unlawful practice but also have suffered some kind of damage." Bower v. AT&T Mobility, LLC, 196 Cal. App. 4th 1545, 1556 (2011) (internal quotation marks omitted). In short, to have standing under the UCL or CLRA, Plaintiffs must sufficiently allege (1) that they suffered an economic injury, and (b) that they actually relied on the purported material misrepresentation. See In re Ferrero Litig., 794 F. Supp. 2d 1107, 1111-12 (S.D. Cal. 2011) (citing Kwikset, 51 Cal. 4th at 326-27).

Defendants challenge Plaintiffs' showing of injury in fact and redressability. The Court concludes that Plaintiffs have adequately alleged an injury in fact and risk of future harm to confer standing.

### 1. Injury in fact

#### a. Concrete and Particularized Injury

"To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 181 (2000) (quoting Lujan, 504 U.S. at 560); see also Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013). Defendants argue that Plaintiffs have not alleged such concrete and particularized injury. (Mot. at 4.) They assert that Plaintiffs rely on flawed arithmetic to theorize that the Products are unable to make the represented number of cups, but do not allege that any Plaintiff actually experienced that injury. (Id. at 4-5.) Defendants argue that there is "no standing for theories of an unproven risk." (Id. at 5 (citing Cahen v. Toyota Motor Corp., 147 F. Supp. 3d 955, 959, 967-68 (N.D. Cal. 2015).)

Plaintiffs counter that their allegations meet both Article III standing and statutory standing, as the FAC sufficiently pleads a financial injury and causal connection. (Opp'n at 2 (citing Cahen, 147 F. Supp. 3d at 966).) The Court agrees. Plaintiffs allege that "[i]n purchasing the Products, Plaintiffs … saw and relied on Defendants' representations made on the packaging" about the amount of servings that could be produced from the ground coffee. (FAC ¶¶ 9-11.) Plaintiffs allege that there is a shortfall in ground coffee in each of the Products, which can only make an average of 68.5% of the servings promised on the packaging. (Id. ¶¶ 20-22, 33-34.) Plaintiffs further allege that they "would have paid significantly less for the Products had [they] known that the Products did not contain enough ground coffee to make the represented number of cups of coffee." (Id.) Plaintiffs have therefore sufficiently alleged a concrete and particularized injury. See Hinojos v. Kohl's Corp., 718 F.3d 1098, 1104 (9th Cir. 2013) ("[W]hen … Plaintiffs contend that class members paid more for a product than they otherwise would have paid, or bought it when they otherwise would not have done so they have suffered an Article III injury in fact.") (internal quotation marks omitted); Coffelt, 2017 WL 10543343, at *5 (C.D. Cal. Jan. 27, 2017) (plaintiff must allege economic injury and actual reliance on purported material representations to have standing under the UCL or CLRA).

Plaintiffs need not allege that they actually attempted to make the represented servings and came up short. In so arguing, Plaintiffs point to Strumlauf v. Starbucks Corp., 192 F. Supp. 3d 1025 (N.D. Cal. 2016) and Rice-Sherman v. Big Heart Pet Brands, Inc., 2020 WL 1245130 ( N.D. Cal. Mar. 16, 2020), where courts found that such allegations are not a requirement for standing. The Court finds these cases persuasive. Here, as in Strumlauf, "even without measuring their own [ground coffee] and finding [it] lacking, Plaintiffs have sufficiently alleged Article III standing." 192 F. Supp. 3d at 1030 (concluding that plaintiffs sufficiently plead injury in fact even though they did not allege that the particular products they purchased were underfilled); see also Rice-Sherman, 2020 WL 1245130, at *6 (finding that plaintiffs need not specifically allege that they independently tested the products and whether each specific product purchased by each named plaintiff was tested). That is because Plaintiffs allege that the Products are uniformly underfilled. If all Products are allegedly underfilled and Plaintiffs allege that they purchased the Products, "it is reasonable to conclude that – even without measuring – Plaintiffs' [Products] were underfilled." Strumlauf, 192 F. Supp. 3d at 1030.

Defendants' arguments to the contrary are unpersuasive. As the Rice-Sherman court explained, in Pels v. Keurig Dr. Pepper, Inc., 2019 WL 5813422 (N.D. Cal. Nov. 6, 2019) and Wallace v. ConAgra Foods, Inc., 747 F.3d 1025 (8th Cir. 2014), plaintiffs failed to allege that all or even most of the products at issue were falsely advertised, rendering "merely speculative whether they purchased any" impacted products. 2020 WL 1245130, at *6. That is not the case here, where Plaintiffs allege that "Defendants place a materially identical representation on the front label of all the Products[.]" (FAC ¶ 22.) Cahen v. Toyota Motor Corp., 717 F. App'x 720 (9th Cir. 2017), is similarly distinguishable, as there, plaintiffs' alleged injury was that their cars were at risk of hacking, but no hacking of any vehicles had occurred outside of controlled experiments. The court found that this future risk of harm was too speculative. Id. And in Lassen v. Nissan North America, Inc., 211 F. Supp. 3d 1267 (C.D. Cal. 2016), plaintiffs alleged that their vehicles had the capability of causing carbon monoxide poisoning. Moreover, plaintiffs did not allege that the products malfunctioned, but rather, plaintiffs merely suggested possible changes to make the product safer. Id. at 1283. Here, Plaintiffs' allegations do not merely concern a future risk or capability of harm. Rather, Plaintiffs allege that the Products (including those purchased by Plaintiffs) "are unable to make anywhere close to the represented number of cups" of coffee. (FAC ¶¶ 20-33.)

Defendants attempt to distinguish Strumlauf, arguing that Plaintiffs' mathematical equation does "not meet the standards for a universal-type injury as found in cases like Strumlauf…." (Reply at 3.) Defendants rely on In re Apple Processor Litigation (Apple Processor II), 2019 WL 3533876 (N.D. Cal. Aug. 2, 2019) and In Re Apple Litigation (Apple Processor I), 366 F. Supp. 3d 1103 (N.D. Cal. 2019), where plaintiffs alleged they were injured by a slowdown or performance degradation in a series of devices (iPhones, Apple TVs, and iPads) after downloading software updates. In those cases, the court found that plaintiffs failed to show a particularized injury absent a showing that any named plaintiff noticed a slowdown or performance degradation in their devices. Apple Processor II, 2019 WL 3533876, at *5. The courts rejected plaintiffs' argument that, as in Strumlauf, there was no need for such a showing

because the software updates affected all the devices.  Id.  In Apple Processor I, plaintiffs argued that defendant's own testing showed that the updates caused a slowdown affecting all devices, but the court found that the cited testing supported an inference that not all users experienced the alleged injury.  366 F. Supp. 3d at 1109.  After plaintiffs sought to support their allegations with their own testing of an iPhone 7, in Apple Processor II, the court held that testing from a single iPhone 7 was "insufficient to infer universal injury to all iPhone 7 users and certainly not enough to support a showing of injury across all the iDevices [(iPhones, Apple TVs, and iPads)] the class seeks to represent."  2019 WL 3533876, at *6.  The courts therefore found that the "universal injury argument" found in cases like Strumlauf was not persuasive there.  Id.

Like Defendants' other authorities, however, these cases are distinguishable.  While Apple Processor I and II do not explain what a Strumlauf "universal-type injury" is, the injury asserted here is far more analogous to the under-filled coffee cups in Strumlauf (or the mislabeled pet food in Rice-Sherman) than to the underperforming cell phones, tablets, and streaming devices alleged in those cases.  Unlike the Apple Processor plaintiffs, Plaintiffs here do not assert an injury across vastly different products, and the variety of factors that may distinguish each phone, tablet, or streaming device are not present here, where the Products are coffee canisters with set net weights and brewing instructions.  The nature of defendants' misconduct is also distinguishable.  While here, as in Strumlauf and Rice-Sherman, Plaintiffs allege that the Products do not contain enough ground coffee to make the amount of servings Defendants advertised,  the Apple Processor cases concern defendant's alleged failure to disclose defects, and there was "nothing to show that the iDevices are not 'fast' or not 'safe' as advertised."  2019 WL 3533876, at *8.  The Court therefore rejects Defendants' argument, adopts the Strumlauf analysis, and finds that Plaintiffs allege a concrete and particularized injury.

### b.  Unpurchased Products

Defendants also argue that Plaintiffs lack standing because they cannot pursue claims for Products they did not purchase.  (Mot. at 5-6.)  While Plaintiffs allege they purchased four variations of the Products, they pursue claims for thirty nine different variations of Products, including a variety of coffee blends of various net weights.  (FAC ¶¶ 9-11, 33-34.)  But courts in the Ninth Circuit consistently apply the "substantially similar product" theory, which holds that class action plaintiffs can assert claims based on products the named plaintiff did not purchase "as long as the products and alleged misrepresentations are substantially similar."  See In re 5-hour ENERGY Mktg. & Sales Practices Litig., 2014 WL 5311272, at *7 (C.D. Cal. Sept. 4, 2014) (listing cases).  This theory is "consistent with the Ninth Circuit's admonition that courts 'should not be too rigid in applying standing requirements to proposed classes.'"  Tabler v. Panera LLC, 2019 WL 5579529, at *10 (N.D. Cal. Oct. 29, 2019) (quoting Brazil v. Dole Food Co., Inc., 2013 WL 5312418, at *1 (N.D. Cal. Sept. 23, 2013)) (listing cases).  As Plaintiffs assert, the similarity in products, claims, and injury to consumers militate in favor of allowing plaintiffs to assert claims for all the challenged Products.  See Ang v. Bimbo Bakeries, Inc., 2014 WL 1024182, at *6 (N.D. Cal. Mar. 13, 2014).  All the Products involve ground coffee, the challenged representations are materially identical across each Product, and Plaintiffs' theory of liability is uniform across all products.  (Opp'n at 5-6.)

Defendants' authorities suggesting otherwise are easily distinguishable, as they concern vastly different products. See Larsen v. Trader Joe's Co., 2012 WL 5458395, at *1 (N.D. Cal. June 14, 2012) (concerning representations that apple juice, biscuits, ricotta cheese, and other products were "all natural"); Carrea v. Dreyer's Grand Ice Cream, Inc., 2011 WL 159380, at *1-3 (N.D. Cal. Jan. 10, 2011) (concerning different claims of "The Original" and "Classic" for two different products – Drumstick and Dibs ice cream). Defendants also add that Plaintiffs cannot expand the lawsuit to 40 different types of products without a non-speculative allegation about any product. (Reply at 4.) But as the Court noted above, Plaintiffs' allegations are not speculative. Plaintiffs may therefore pursue claims for the substantially similar products they have not purchased. (See FAC ¶ 33.)

### 2. Redressability

Defendants next argue that Plaintiffs do not have standing to seek injunctive relief because they have not alleged a likely future injury that is redressable by the Court. Defendants argue that to seek injunctive relief, Plaintiffs must allege that they "would actually purchase the Products again." (Mot. at 7.) But the Ninth Circuit has held that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." Davidson v. Kimberly-Clark, 889 F.3d 956, 969 (9th Cir. 2018). Indeed, "[k]nowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future." Id. "In some cases, the threat of future harm may be the  consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." Id. at 969-70. That is what precisely what Plaintiffs allege here. The FAC asserts that Plaintiffs are "susceptible to reoccurring harm in that they desire to continue to purchase the Folgers ground coffee products but cannot be certain Defendants have corrected their deceptive and false advertising scheme." (FAC ¶ 13.) Plaintiffs allege that they "shop at stores where the Folgers ground coffee products are sold" and "they would like to continue purchasing the Folgers ground coffee products because they like the taste." (Id.) Plaintiffs have therefore sufficiently alleged a threat of future of harm.

### 3. Standing under laws of other states

Finally, Defendants argue that Plaintiffs lack standing to seek relief on behalf of a putative class whose members live in states other than where each respective Plaintiff lives. (Mot. at 8.) The Court disagrees. Plaintiffs do not claim to have "individual standing" to bring claims on behalf of putative class members, but rather, they seek to represent a class. Garrison v. Whole Foods Mkt. Grp., Inc., 2014 WL 2451290, at *4 (N.D. Cal. June 2, 2014). In a class action, "the named plaintiffs regularly litigate not only their own claims but also claims of other class members based on transactions in which the named plaintiffs played no part." Id. (citing Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 632 F.3d 762,

768 (1st Cir. 2011)).  Moreover, Plaintiffs are correct that Defendants "appear[] to conflate the concept of standing with choice-of-law analysis.  The issue here is not whether the Article III standing requirements are met, but whether California law can apply to non-resident class members."  Chavez v. Wal-Mart Stores, Inc., 2014 WL 12591244, at *2 (C.D. Cal. Mar. 3, 2014).  That choice-of-law question is addressed below, and the Court rejects this argument as it relates to standing.

## B.  Specific Personal Jurisdiction

Defendants next challenge the Court's personal jurisdiction over Defendants with respect to out-of-state putative class members' claims.  (Mot. at 9.)  Defendants mainly rely on Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., San Francisco Cty., where the U.S. Supreme Court held that California courts did not have personal jurisdiction over the defendant pharmaceutical company as to claims brought by plaintiffs in a mass tort action who were nonresidents of California, where the nonresident plaintiffs did not allege any connection between their claims and California. 137 S. Ct. 1773, 1777 (2017).  The Supreme Court, however, did not address whether its holding extended to the class action context.  Nevertheless, in Zuehlsdorf v. FCA US LLC, this Court agreed with "the weight of authority examining this issue[, which] has concluded that Bristol-Myers does not apply to class actions."  2019 WL 4422673, at *6 (C.D. Cal. Aug. 7, 2019) (quoting Sotomayor v. Bank of Am., N.A., 377 F. Supp. 3d 1034, 1037 (C.D. Cal. 2019)).[2]  The Court reasserts this view, and DENIES Defendants' Motion as to personal jurisdiction over out-of-state putative class members.

Defendants make a similar argument as to Plaintiff Schoener, who is a resident of New York and purchased the Products in New York.  (Mot. at 10-11 (citing FAC ¶ 10).)  This is a closer question because courts generally find that "Bristol-Myers applies to named parties" in class actions sounding in diversity.  Gaines v. Gen. Motors, LLC, 2018 WL 3752336, at *2 (S.D. Cal. Aug. 7, 2018).  Plaintiffs appear to concede that this Court does not have personal jurisdiction over Plaintiff Schoener's claims.  However, Plaintiffs ask the Court to exercise pendent personal jurisdiction over Schoener's claims.  (Opp'n at 11.)  The Court agrees to do so.

"[A] court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court has personal jurisdiction."  Action Embroidery Corp. v. Atl. Embroidery, Inc., 368 F.3d 1174, 1180-81 (9th Cir. 2004).  This doctrine serves "judicial economy, avoidance of piecemeal litigation, and overall convenience of the parties."  Id.  Defendants do not appear to dispute that the Court has personal jurisdiction over Plaintiffs Ashton and Ibarra and over the California Subclass

---

[2] Defendants attempt to distinguish that case by noting that in Zuehlsdorf, the parties did not dispute the Court's jurisdiction over it as to the named plaintiff's claims.  (Reply at 6 (citing 2019 WL 442673, at *6).)  But that fact was not determinative, nor does the fact that Defendants here do in fact dispute the Court's jurisdiction over one of three named Plaintiffs change the Court's rationale.

members, or that the claims arise out of the same nucleus of operative facts.  (Opp'n at 11; Reply at 6.)  Defendants' Reply instead challenges Plaintiffs' claim that exercising personal jurisdiction over Schoener would advance judicial economy, avoid piecemeal litigation, or promote fairness.  (Reply at 6.)  In particular, Defendants argue that because there are already identical lawsuits against Defendants in Florida and Missouri, Defendants would experience a burden to litigate nonresidents' claims here.  (Id.)  The Court is not persuaded, and finds that exercising pendent jurisdiction here is appropriate.  The Court therefore DENIES Defendants' Motion as to personal jurisdiction over Schoener.

## C.  Sufficiency of Allegations

Defendants next argue that the FAC also fails on the merits, as Plaintiffs failed to state a claim under any of their theories.  (Mot. at 11.)  The Court addresses each argument in turn.

### 1.  Consumer Protection Claims[3] (Claims 1-5)

#### a.  Heightened Pleading Standard

UCL, FAL, and CLRA claims must meet the heightened pleading standards required by Rule 9.  See Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009).  Hence, litigants bringing deceptive practice claims must allege "the who, what, when, where, and how" of the supposedly fraudulent conduct.  Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997).  Defendants argue that Plaintiffs fail to establish the "how" prong, arguing that "Plaintiffs do not provide factual allegations to explain how they reach their flawed conclusion" beyond a mathematical equation.  (Mot. at 16.)  The Court disagrees.  Plaintiffs allege that each Product includes serving representations (that each Product makes "up to" a set number of servings), as well as instructions to use one tablespoon of ground coffee to make one serving/cup of coffee.  (FAC ¶¶ 20-34.)  Plaintiffs allege that if they follow those brewing instructions, the Products contain "substantially less ground coffee than is required to make the recommended number of 'up to' servings promised on the packaging."  (FAC ¶¶ 20-34.)  The FAC further alleges that Plaintiffs were induced to pay substantially more for the Products based on these representations.  (Id. ¶¶ 9-11.)  These allegations are sufficient to establish the "how" of the fraudulent conduct, and to provide Defendants ample notice of the circumstances underlying Plaintiffs' claims against them.  Strumlauf, 192 F. Supp. 3d at 1035.

//
//
//

---

[3] These are: (1) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq.; (2) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, et seq.; (3) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq.; (4) violation of N.Y. Gen. Bus. Law § 349; and (5) violation of N.Y. Gen. Bus. Law § 350.

### b. Reasonable Consumer Test

Defendants argue that Plaintiffs' consumer protection claims fail because they do not satisfy the reasonable consumer test. (Mot. at 12.)  To state a claim under the UCL, FAL, or CLRA, a plaintiff must allege the defendant's purported misrepresentations are likely to deceive a reasonable consumer.  See Williams v. Gerber Products Co., 552 F.3d 934, 938 (9th Cir. 2008) (explaining that unless the advertisement at issue targets a particularly vulnerable group, courts must evaluate claims for false or misleading advertising from the perspective of a reasonable consumer); see also Reid v. Johnson & Johnson, 780 F.3d 952, 958 (9th Cir. 2015) ("It is true that violations of the UCL, FAL, and CLRA are evaluated from the vantage point of a 'reasonable consumer.'").  New York courts have similarly adopted a reasonable consumer test for NY GBL 349 and 350 claims.  See, e.g., Jessani v. Monini N. Am., Inc., 744 F. App'x 18, 19 (2d Cir. 2018) ("Plaintiffs must plausibly allege 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'").  Although reasonableness can, in appropriate circumstances, be decided as a question of law, "California courts ... have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]."  Williams, 552 F.3d at 938 (internal citation omitted).  Plaintiffs, however, must allege "more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner."  Brod v. Sioux Honey Ass'n, Co-op, 927 F. Supp. 2d 811, 828 (N.D. Cal. 2013) (citing Lavie v. Procter & Gamble Co., 105 Cal. App. 4th 496, 508 (2003)).

Defendants suggest that Plaintiffs' allegation that the Products are "unable to make anywhere close to the represented number of cups" based on their theory and "calculations" amount to naked assertions without factual enhancement.  (Id. at 13 (quoting Iqbal, 556 U.S. at 678).)  Defendants again claim that Plaintiffs must allege that Defendants actually harmed them, i.e., that Plaintiffs were actually unable to make the represented number of cups of coffee, to state a claim.  (Id.)  Defendants also argue that the allegations in the FAC are demonstrably false and ignore obvious alternative explanations.  (Id. at 14.)  The Court disagrees.

Plaintiffs allege that while the Products represented that they could "make up to 240 cups," if the directions are followed, the Product will only make 173 cups, or 72% of the servings.  (FAC ¶¶ 9-11, 29-31, 36.)  Plaintiffs further allege that, based on the representations on the Products, a reasonable consumer would reasonably believe (as Plaintiffs did) that the Products would indeed make up to represented cups of coffee, rather than 72% of the represented servings.  (Id.)  Defendants do not dispute that the Products represent to make "up to" a certain number of servings of coffee, but instead take issue with Plaintiffs' methodology to conclude that the Products do not meet that representation.  Defendants argue that the obvious alternative explanation for Plaintiffs' allegations is that a 1:1 ratio is not needed to make up to the amount of suggested servings.  (Mot. at 17.)  But when "there are two alternative explanations ... plaintiff's complaint survives a motion to dismiss ... [unless] defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

Defendants cite several authorities for the proposition that courts must reject implausible explanations.  (Mot. at 17; Reply at 11-12.)  But Plaintiffs' allegations do not make it "impossible for the plaintiff[s] to prove that a reasonable consumer was likely to be deceived" by Defendants' represented servings.  McCrary v. Elations Co., LLC, 2013 WL 6402217, at *6 (C.D. Cal. Apr. 24, 2013) (citing Williams, 552 F.3d at 939).  While it is certainly possible that consumers would understand that the Products could make up to the stated servings by using less ground coffee than recommended per cup, it is also possible that consumers would expect to be able to make the represented servings following the recommended brewing instructions.  See, e.g., Strumlauf, 192 F. Supp. 3d at 1034.  The Court cannot "conclude as a matter of law that a reasonable consumer would not be misled by the [Defendants'] label's 'makes up to' language[.]"  Arthur v. United Indus. Corp., 2018 WL 1472500, at *6-7 (C.D. Cal. Mar. 23, 2018).  If anything, the alleged deception "is probable enough that the issue should be decided by a trier of fact, not on a motion to dismiss."  Strumlauf, 192 F. Supp. 3d at 1034.

The Court therefore DENIES Defendants' Motion as to the FAL, CLRA, and NY GBL claims (Claims 1, 2, 4-5).

### c.  UCL – Unfair and Unlawful Conduct

Defendants also argue that Plaintiffs fail to allege any unlawful or unfair conduct under the UCL.  The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  The UCL provides separate theories of liability under the "unlawful," "unfair," and "fraudulent" prongs.  Stanwood v. Mary Kay, Inc., 941 F. Supp. 2d 1212, 1222 (C.D. Cal. 2012) (citing Lozano v. AT&T Wireless Servs., Inc., 504 F.3d 718, 731 (9th Cir. 2007)).  A practice is "unlawful" if it violates a law other than the UCL.  Farmers Ins. Exch. v. Super. Ct., 2 Cal. 4th 377, 383 (Cal. 1992).  The UCL "'borrows' violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under [the UCL]."  Id.; Clerkin v. MyLife.com, Inc., 2011 WL 3607496, at *6 (N.D. Cal. Aug. 16, 2011) ("Violation of almost any federal, state or local law may serve as the basis for a UCL claim.").  The UCL sweeps broadly, embracing anything that can properly be called a business practice and at the same time is forbidden by law.  Cal. Bus. & Prof. Code § 17200.

Defendants argue that the "unlawful" prong fails because Plaintiffs have not alleged that Defendants violated any applicable law.  (Mot. at 18.)  But violations of the CLRA and FAL may serve as predicate violations for a UCL "unlawful" conduct claim.  Zeiger v. WellPet LLC, 304 F. Supp. 837, 852 (N.D. Cal. 2018).  Because, as established above, these claims survive this Motion, Plaintiffs sufficiently allege a UCL claim under the "unlawful" prong.

Defendants also argue that Plaintiffs' "unfair" argument fails.  (Mot. at 18-19.)  They assert that Plaintiffs do not allege the challenged practice is "immoral, unethical, unscrupulous, or substantially injurious," or identify any public policy that the defendant violated.  (Id. at 18 (quoting In re Yahoo! Inc. Customer Data Sec. Breach Litig., 2017 WL 3727318, at *24 (N.D.

Cal. Aug. 30, 2017) and Hodges v. Apple Inc., 2013 WL 4393545, at *6 (N.D. Cal. Aug. 12, 2013)).) However, the FAC alleges that "Defendants' conduct was and continues to be of no benefit to purchasers of the Products, as it is misleading, unfair, unlawful, and is injurious to consumers who rely on the packaging. Deceiving consumers as to how many cups of coffee the Products can make is of no benefit to consumers." (FAC ¶ 79.) These allegations are sufficient to state an "unfair" prong claim. Kanfer v. Pharmacare US, Inc., 142 F. Supp. 3d 1091, 1106 (S.D. Cal. 2015) (finding sufficient allegation that labeling offends public policy by seeking to profit from consumers' vulnerability to false claims, and that utility of the conduct does not outweigh the gravity of the harm).

The Court therefore DENIES Defendants' Motion as to the UCL claims.

### 2. Breach of Express Warranty (Claim 6)

To state a breach of express warranty claim under California law, Plaintiffs must prove that Defendants: "(1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." Viggiano v. Hansen Natural Corp., 944 F.Supp.2d 877, 893–95 (C.D. Cal. 2013). Under New York law, a similar standard applies: Plaintiffs must prove that "an affirmation or promise existed, that it was breached, and that plaintiff detrimentally relied on the warranty." Tears v. Boston Scientific Corp., 344 F. Supp. 3d 500, 512 (S.D.N.Y. 2018).

Defendants argue that Plaintiffs' breach of express warranty claim fails because they do not plead facts that support the notion that there were any written promises or affirmations that were misrepresentations. (Mot. at 20.) The Court disagrees. "A warranty relates to the title, character, quality, identity, or condition of the goods." Keith v. Buchanan, 173 Cal.App.3d 13, 20 (1985) (internal citation omitted.). In deciding whether a statement or affirmation made by a seller constitutes an express warranty under Cal. Comm. Code § 2313, the Court must decide whether the seller's statement constitutes an affirmation of fact or promise or description of the goods, or whether it is instead "merely the seller's opinion or commendation of the goods." Id.[4]

Here, Plaintiffs allege that: (1) specific representations about servings on the Products' packaging ("MAKES UP TO 240 6FL OZ CUPS" or variations based on the size of the canister) are affirmations or promises that the Product can indeed make the stated amount of cups; (2) Plaintiffs relied on those representations in purchasing the Products; and (3) the Products contain substantially less ground coffee than required to make the promised number of servings. (FAC ¶¶ 9-11, 20-33.) The Court finds that these allegations are sufficient to meet the elements of a breach of express warranty claim. See Kanfer, 142 F. Supp. 3d at 1104; Coffelt, 2017 WL 10543343, at *7. While Defendants argue that these allegations hinge on an incomplete, out-of-context reading of the serving representations (Mot. at 20), for the reasons described in

---

[4] This also applies to claims under Section 2-313 of the New York Uniform Commercial Code. Promuto v. Waste Mgmt., Inc., 44 F. Supp. 2d 628 (S.D.N.Y. 1999).

Section C.1.b. above, the Court rejects this view.  And to the extent that the parties disagree on the proper interpretation of the serving representations and whether they constitute an affirmation of fact, that is a question of fact that is premature at the pleading stage.  See McDonnell Douglas Corp. v. Thiokol Corp., 124 F.3d 1173, 1176 (9th Cir. 1997); Buonasera v. Honest Co., Inc., 208 F. Supp. 3d 555, 567 (S.D.N.Y. 2016).

The Court therefore DENIES Defendants' Motion as to Claim 6.

### 3.  Breach of Implied Warranty (Claim 7)

Defendants also challenge Plaintiffs' breach of implied warranty claim, arguing that (1) this claim rises and falls with the express warranty claim, and (2) Plaintiffs must be in vertical privity with the defendant.  (Mot. at 20.)  First, as established above, Plaintiffs state a claim for breach of express warranty, and that claim survives this Motion.  Second, as Plaintiffs point out, California and New York recognize two exceptions to the privity rule for third party beneficiaries and for claims related to food.  As the consumers who purchased the products, Plaintiffs need not show vertical privity with Defendants, as they are the intended beneficiaries of the warranties. See Mack v. LLR, Inc., 2018 WL 6927860, at *13 (C.D. Cal. Aug. 15, 2018); Michael v. Honest Co., Inc., 2016 WL 8902574, at *8 (C.D. Cal. Dec. 6, 2016); Praxair, Inc. v. General Insulation Co., 611 F. Supp. 2d 318, 330 (W.D.N.Y. 2009).  Moreover, because the Products are foodstuffs meant for human consumption, Plaintiffs are further exempt from the privity requirement. Cabrera, 2019 WL 1146828, at 11 ("Privity is not required when the claim relates to food or other substances intended for consumption by consumers."); Ciampichini v. Ring Bros., 40 A.D. 2d 289, 292, 339 N.Y.S. 2d 716 (1973) ("The pattern in New York has been to eliminate the privity requirement (1) with respect to food and beverages") (citation omitted).

The Court therefore DENIES Defendants' Motion to dismiss Claim 7.

### 4.  Misrepresentation Claims (Claims 8 and 9)

To state an intentional misrepresentation claim in California and New York, Plaintiffs must allege the following factors: (1) misrepresentation, (for example, false representation, concealment, or nondisclosure); (2) knowledge of falsity, or scienter; (3) intent to defraud, (that is, to induce reliance); (4) justifiable reliance; and (5) resulting damage.  Miller v. Ghirardelli Chocolate Co., 912 F. Supp. 2d 861 (N.D. Cal. 2012); accord Marcus v. AT&T Corp., 138 F.3d 46 (2d Cir. 1998).  To state a negligent representation claim, the same elements are applicable, but rather than "knowledge of falsity, or scienter," Plaintiffs need only allege that Defendants did not have "reasonable ground for believing it to be true."  Wells Fargo Bank, N.A. v. FSI, Fin. Solutions, Inc., 196 Cal. App. 4th 1559, 1573 (2011) (citation and internal quotation marks omitted).

Defendants first argue that these claims fail because there was no misrepresentation (Mot. at 22), but the Court rejects this argument for the reasons established above in Section C.1.b.  Indeed, Plaintiffs allege that while the Products represented on the label that they could

"make up to" certain servings of coffee, pursuant to the instructions on the label, the Products only contain enough ground coffee to make an average of 68.25% of the servings promised on the packaging. (FAC ¶¶ 9-11, 29-36.) Defendants next argue that Plaintiffs fail to allege the requisite fraudulent intent to deceive, or lacked reasonable grounds to believe that the representations were true. (Mot. at 22.) However, there is a lower pleading burden to allege intent, knowledge, or other conditions of a person's mind because Plaintiffs cannot be expected to plead Defendants' state of mind. Concha v. London, 62 F.3d 1492, 1503 (9th Cir. 1995); Fed. R. Civ. P. 9(b). Plaintiffs allege that "Defendants knew or had been negligent in not knowing that the Products did not contain enough ground coffee to make the specified number of servings. Defendants had no reasonable grounds for believing their misrepresentations were not false or misleading." (FAC ¶ 130.) (See also FAC ¶ 122 ("Defendants knew that the representations were misleading, or have acted recklessly in making the representations, without regard for the truth.").) These allegations are sufficient to show fraudulent intent. Astiana v. Ben & Jerry's Homemade, Inc., 2011 WL 2111796, at *12 (N.D. Cal. May 26, 2011) (finding that allegations that "defendants 'knew or recklessly disregarded' the fact that their ice cream was not 'all natural'" were sufficient).

Defendants next argue that Plaintiffs cannot plead that any reasonable consumer justifiably relied on the "makes up to 240" servings statement to conclude that the Products contain 240 tablespoons of ground coffee. (Mot. at 22.) The Court disagrees. Plaintiffs allege that consumers reasonably expect that "if they follow the serving instructions, the Products will produce the number of servings/cups of coffee as represented on the Products' packaging" and this was an important factor in their decision to purchase the products. (FAC ¶¶ 9-11, 36-37.) In any event, to the extent that Defendants dispute the reasonableness of that reliance, that is a question of fact that is premature at the motion to dismiss stage. See Sherwin-Williams Co. v. JB Collision Servs., Inc., 2015 WL 3999030, at *7 (S.D. Cal. June 30, 2015); Singleton v. Fifth Generation, Inc., 2016 WL 406295, at *14 n.24 (N.D.N.Y Jan. 12, 2016).

Finally, Defendants argue that Plaintiffs' negligent misrepresentation claim is barred by the economic loss doctrine. (Mot. at 23.) The economic loss rule bars actions for negligence to recover purely economic losses in the absence of: "(1) personal injury, (2) physical damage to property, (3) a special relationship existing between the parties, or (4) some other common law exception to this rule." Minkler v. Apple, Inc., 65 F. Supp. 3d 810, 820 (N.D. Cal. 2014). It also bars recovery under tort law where the claim relies on substantially similar allegations as breach of warranty claims. (Mot. at 24.) "Under such circumstances, the economic loss rule limits [Plaintiffs'] to recovery under contract law rather than tort law." Linde, LLC v. Valley Protein, LLC, 2019 WL 3035551, at *16 (E.D. Cal. July 11, 2019).

However, the economic loss rule "does not apply to Plaintiff[s'] negligent misrepresentation claim" because "California law classifies negligent misrepresentation as a species of fraud … for which economic loss is recoverable." Zakaria v. Gerber Prod. Co., 2015 WL 3827654, at *11 (C.D. Cal. June 18, 2015) (citing Robinson Helicopter Co., Inc. v. Dana Corp., 34 Cal. 4th 979 (2004)); see also Takano v. Procter & Gamble Co., 2018 WL 5304817, at *11 (E.D. Cal. Oct. 24, 2018) (noting that "[c]ourts in both New York and California 'have

allowed intentional misrepresentation claims to proceed, notwithstanding the economic loss rule'" and denying motion to dismiss as to these claims); <u>Augustine v. Talking Rain Beverage Co., Inc.</u>, 386 F. Supp. 3d 1317, 1331 (S.D. Cal. 2019) ("Notwithstanding[] the economic loss rule, courts in California have allowed [negligent] misrepresentation claims to proceed."). While Defendants point to earlier decisions barring negligent misrepresentation claims based on economic injury in consumer class actions, they make no attempt to distinguish the many decisions that have held otherwise. Absent any argument why the Court should reject this line of cases, the Court will allow Plaintiffs' negligent misrepresentation claims to proceed.

Accordingly, Defendants' Motion to dismiss the misrepresentation claims (Claims 8 and 9) is DENIED.

### 5. Unjust Enrichment (Claim 10)

Defendants argue that Plaintiffs may not seek restitution here because (1) they failed to plead an actionable misrepresentation or omission, (2) they cannot assert both a quasi-contract claim and a breach of warranty claim, and (3) this claim is superfluous to the consumer fraud claims. (Mot. at 24.) First, as explained above, Plaintiffs adequately allege that the Products' serving representations are misleading. Second, Rule 8(d) "allows parties to plead claims in the alternative or in an inconsistent manner, and courts in this Circuit have allowed unjust enrichment to proceed simultaneously in one action." <u>Becerra v. Gen. Motors LLC</u>, 241 F. Supp. 3d 1094, 1117 (S.D. Cal. 2017); <u>see also</u> <u>Longest v. Green Tree Servicing LLC</u>, 74 F. Supp. 3d 1289, 1302 (C.D. Cal. 2015) (listing cases). Here, Plaintiffs' Opposition invokes this alternative pleading. (Opp'n at 26.) Construing the FAC in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs have pleaded their contract and unjust enrichment claims in the alternative, and declines to dismiss the unjust enrichment claims on these grounds. <u>See Longest</u>, 74 F. Supp. 3d at 1302.[5]

Finally, the Court declines to dismiss this claim merely because it may be duplicative or superfluous. As the Ninth Circuit has noted, that a claim is duplicative of or superfluous of other claims "is not grounds for dismissal." <u>Astiana v. Hain Celestial Group, Inc.</u>, 783 F.3d 753, 762-63 (9th Cir. 2015) (citing Fed. R. Civ. P. 8(d)(2)). Rather, "to the extent that this cause of action is duplicative of Plaintiff's claims under California statutory law (the UCL, CLRA, and FAL) which also seek restitution, Plaintiff is [also] permitted to plead claims in the alternative." <u>Diamos v. Walmart Inc.</u>, 2020 WL 1942322, at *4 (C.D. Cal. Jan. 9, 2020).

The Court therefore DENIES Defendants' Motion as to Claim 10.

---

[5] The Court recognizes that some courts in this circuit have come to the opposite conclusion, finding that simultaneous breach of contract and quasi-contract claims are inappropriate in California and dismissing those claims. (Mot. at 24; Reply at 14 (citing <u>Smith v. Allmax Nutrition, Inc.</u>, 2015 WL 9434768, at *9 (E.D. Cal. Dec. 24, 2015)).) However, the Court follows the line of cases allowing such claims at the pleading stage where plaintiffs argue that these claims are plead in the alternative. <u>Longest</u>, 74 F. Supp. 3d at 1302 (listing cases).

### 6. MMWA Claim (Claim 11)

Defendants argue that Plaintiffs' MMWA is procedurally defective because, pursuant to that statute, where an action is brought as a class action, the number of named plaintiffs must be more than one hundred. 15 U.S.C. § 2310(d)(3)(C) ("No claim shall be cognizable … if the action is brought as a class action, and the number of named plaintiffs is less than one hundred."). (Mot. at 21.) The Court agrees. In Floyd v. Am. Honda Motor Co., 966 F.3d 1027 (9th Cir. 2020), the Ninth Circuit held that federal courts cannot exercise jurisdiction over MMWA claims in class actions brought by fewer than one hundred named plaintiffs. Id. at 1035 (holding that "CAFA may not be used to evade or override the MMWA's specific numerosity requirement" and affirming dismissal of MMWA claim where complaint did not include at least one hundred named plaintiffs). This action only includes three named plaintiffs. Accordingly, Defendants' Motion is GRANTED, and Claim 11 is DISMISSED without leave to amend.

### 7. Injunctive and Equitable Relief

Plaintiffs seek injunctive and other equitable relief, including "an order prohibiting Defendants from engaging in the unlawful act[s]" described in the FAC. (FAC ¶ C.) Defendants challenge Plaintiffs' requests for equitable relief, arguing that it is not available when there is an adequate remedy at law. (Mot. at 25.) Defendants argue that because Plaintiffs seek monetary damages and injunctive relief for the same conduct, they are "required to allege facts suggesting that damages under [their other claims] would not provide adequate relief." See Duttweiler, 2015 WL 4941780, at *8. (Mot. at 25.) But Plaintiffs do so here. Plaintiffs argue that injunctive relief is appropriate here because legal damages alone are inadequate for Plaintiffs to obtain full relief. (Opp'n at 27.) They argue that they will suffer irreparable injury in the absence of such relief, particularly because they would like to continue purchasing the Products but cannot trust that Defendants will label or advertise the products truthfully in the future. (FAC ¶ 13.) Plaintiffs have therefore alleged "that they continue to suffer an injury and that a solution is not presently available." Grace v. Apple Inc., 2017 WL 3232464, at *16 (N.D. Cal. July 28, 2017). This is sufficient to allege that a damages remedy is inadequate. Evans v. DSW, Inc., 2017 WL 7058232, at *6 (C.D. Cal. Sept. 14, 2017).

The Court DENIES Defendants' Motion as to Plaintiffs' request for injunctive and equitable relief.

### 8. Punitive Damages

Defendants also ask the Court to dismiss Plaintiffs' request for punitive damages. (Mot. at 26.) Punitive damages, Defendants argue, are limited to circumstances of "oppression, fraud, or malice[.]" (Id. (citing Cal. Civ. Code § 3294(a)).) To make that showing against a corporate entity, Plaintiffs must allege that an officer, director, or managing agent of the corporation had "advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice." (Id. (citing In re Yahoo! Inc., 313 F. Supp. 3d at 1147-48 (citation omitted)).)

Plaintiffs make no effort to establish that their allegations are sufficient to make that showing, but instead argue that they need not include such allegations, as this is not required under federal pleading standards. (Opp'n at 28.) Plaintiffs argue that federal pleading standards allow for a "'short and plain' prayer for punitive damages that relies entirely on unsupported and conclusory averments of malice or fraudulent intent." Shapiro v. AT&T Mobility, LLC, 2020 WL 4341778, at *6 (C.D. Cal. May 18, 2020); see also Rees v. PNC Bank, N.A., 308 F.R.D. 266, 273 (N.D. Cal. 2015) (concluding that "California's heightened pleading standard irreconcilably conflicts with Rules 8 and 9 of the [FRCP]" and finding that conclusory and supported averments of malice and fraudulent intent were sufficient). The Court disagrees with that lenient pleading standard. Terpin v. AT&T Mobility, LLC, 2020 WL 5369410, at *6 (C.D. Cal. Sept. 8, 2020) ("[T]he Court respectfully disagrees with the lenient pleading standard applied in Shapiro, which permitted 'unsupported and conclusory averments of malice.'"); Freedom Transp., Inc. v. Travelers Cos., Inc., 2016 WL 7496731, at *9 (C.D. Cal. Mar. 24, 2016) (finding that plaintiff failed to sufficiently plead facts supporting a finding of malice, fraud or oppression).

The Court GRANTS Defendants' Motion and DISMISSES Plaintiffs' request for punitive damages WITH LEAVE TO AMEND.

## D. Nationwide Class Allegations

Finally, Defendants ask the Court to dismiss Plaintiffs' nationwide class allegations, arguing that applying California's laws to a nationwide class would violate Defendants' due process rights. (Mot. at 26-27.) Defendants contend that California law conflicts with the laws of the other 49 states, and it cannot apply when the claims of absent class members and Defendants have no connection to California. (Id. at 27.) They further claim that applying the laws of the 50 states renders the putative nationwide class unmanageable. (Id.) Defendants rely on Mazza v. Am. Honda Motor Co., Inc., 666 F.3d 581 (9th Cir. 2012), where the Ninth Circuit vacated certification of a nationwide class of consumers after finding "that the district court abused its discretion in certifying a class under California law that contained class members who purchased or leased their car in different jurisdictions with materially different protection laws." Id. at 590.

Plaintiffs counter that Defendants fail to meet their burden of showing any material conflicts between California law and other state laws. (Opp'n at 29.) Plaintiffs argue that Defendants' request to dismiss nationwide class claims should be deferred until class certification, and that Defendants have failed to engage in an analytically rigorous conflict of law analysis at this stage. (Id. at 29-30.) The Court agrees with Plaintiffs.

"Courts in this Circuit have routinely held that [Mazza] does not hold that nationwide classes are, as a matter of law, uncertifiable under California's consumer protection laws." Mack v. LLR, Inc., 2018 WL 6927860, at *5 (C.D. Cal. Aug. 15, 2018) (citing Sonner v. Schwabe N. Am., Inc., 2015 WL 13307076, at *1 (C.D. Cal. Nov. 18, 2015)). "Thus, courts should engage in a choice-of-law analysis to determine if the various laws at issue conflict." (Id.) As this Court has previously recognized, courts in this Circuit appear divided as to whether that choice-of-law analysis is appropriate at the pleading stage. Id. at *5. However, here, as in Mack, the Court

concludes that it would be premature to engage in a detailed choice-of-law analysis at this stage. Id. The Court considers that Mazza was decided at the class certification stage, after the Ninth Circuit conducted a detailed choice-of-law analysis comparing how multiple states' consumer protection laws applied to the plaintiffs' claims. Mazza, 666 F.3d at 589-94.

Such detailed analysis is not appropriate at this stage. Dean v. Colgate-Palmolive Co., 2015 WL 3999313, at *11 (C.D. Cal. June 17, 2015). Even if it were, the Court is not persuaded by Defendants' analysis. Defendants include a chart that summarizes each state law's provisions regarding such elements as scienter, reliance, remedies, and defenses. Defendants cite to a decision at the class certification stage to argue that courts rely on similar charts to dismiss nationwide claims. (Reply at 15 (citing In re: First Am. Home Buyers Prot. Corp. Class Action Litig., 313 F.R.D. 578, 602 (S.D. Cal. 2016).) But as Plaintiffs point out, even at the class certification stage, in In re POM Wonderful LLC Mktg. & Sales Practices Litig., another court found that a similar analysis was insufficient, noting that "nowhere d[id] [defendants] apply the facts of this case to those law or attempt to demonstrate, beyond citation to Mazza, that a true conflict exists." 2012 WL 4490860, at *3-4 (C.D. Cal. Sept. 28, 2012). As that decision illustrates, the necessary choice-of-law analysis may be fact-intensive, and therefore inappropriate at the pleading stage.

Accordingly, as it has repeatedly done, the Court defers this fact-intensive inquiry to the class certification stage, after the parties have engaged in discovery. Dean v. Colgate-Palmolive Co., 2015 WL 3999313, at *11 (C.D. Cal. June 17, 2015). While the Court recognizes that Plaintiffs face significant hurdles to certify a nationwide class, the Court declines to dismiss (or strike) nationwide class allegations here, and finds that "Rule 23 is the better vehicle to test the propriety of class certification." Id. at *11 (C.D. Cal. June 17, 2015) (quoting Connelly v. Hilton Grant Vacations Co., LLC, 2012 WL 2129364, at *3 (S.D. Cal. June 11, 2012)). The Court DENIES the Motion as to the nationwide class allegations.

## V.    CONCLUSION

For the reasons above, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion. The Court DISMISSES Plaintiffs' MMWA claim (Claim 11) WITHOUT LEAVE TO AMEND, and DISMISSES Plaintiffs' request for punitive damages WITH LEAVE TO AMEND. Plaintiffs must file an amended complaint, if any, by December 21, 2020. The December 21, 2020 hearing is VACATED.

**IT IS SO ORDERED.**